NOS. 4-06-1003, 4-06-1004 cons.          Filed 8/15/07

IN THE APPELLATE COURT

OF ILLINOIS
FOURTH DISTRICT

| | | |
|---|---|---|
| PROGRESSIVE UNIVERSAL INSURANCE COMPANY OF ILLINOIS,<br>　　　Plaintiff,<br>　　　v.<br>DEBBIE S. TAYLOR; CEDRIC A. YOUNG;<br>HEATHER L. TAYLOR; KAHENDE M. JAKE;<br>DANIEL G. JOYCE; ESTATE OF JERRY L.<br>JEFFERS, Deceased; THE CARLE FOUNDATION;<br>and CARLE CLINIC ASSOCIATION,<br>　　　Defendants,<br>　　　and<br>CARLE FOUNDATION HOSPITAL, a Not-For-Profit<br>Corporation; and CARLE CLINIC ASSOCIATION, a<br>Professional Corporation,<br>　　　Counterplaintiffs-Appellees,<br>　　　v.　(No. 4-06-1003)<br>KAHENDE M. JAKE,<br>　　　Counterdefendant-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from<br>Circuit Court of<br>Champaign County<br>No. 05MR111 |
| ---------------------------------------------------------- | ) | |
| PROGRESSIVE UNIVERSAL INSURANCE COMPANY OF ILLINOIS,<br>　　　Plaintiff,<br>　　　v.<br>DEBBIE S. TAYLOR; CEDRIC A. YOUNG;<br>HEATHER L. TAYLOR; KAHENDE M. JAKE;<br>DANIEL G. JOYCE; ESTATE OF JERRY L.<br>JEFFERS, Deceased; THE CARLE FOUNDATION;<br>and CARLE CLINIC ASSOCIATION,<br>　　　Defendants,<br>　　　and<br>CARLE FOUNDATION HOSPITAL, a Not-For-Profit<br>Corporation; and CARLE CLINIC ASSOCIATION, a<br>Professional Corporation,<br>　　　Counterplaintiffs-Appellees,<br>　　　v.　(No. 4-06-1004)<br>DANIEL G. JOYCE,<br>　　　Counterdefendant-Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Honorable<br>Michael Q. Jones,<br>Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

Counterdefendants Kahende M. Jake and Daniel G. Joyce sustained injuries when the car in which they were riding as passengers ran off the road and crashed. The car was insured by Progressive Universal Insurance Company of Illinois (Progressive). Progressive paid them $5,000 apiece pursuant to the medical-payments coverage of its policy. The medical providers, Carle Foundation Hospital and Carle Clinic Association (collectively, Carle), won a summary judgment requiring Jake and Joyce to endorse the checks over to Carle. We have consolidated their appeals.

We modify the summary judgment so as to require Jake and Joyce to turn over to Carle only 40% of the proceeds of the two $5,000 checks. Although their indebtedness to Carle may well be more, section 10(a) of the Health Care Services Lien Act (770 ILCS 23/10(a) (West 2004)) limits Carle's lien to 40%. We affirm the judgment as modified.

## I. BACKGROUND

On August 24, 2004, in Urbana, Cedric A. Young was driving Debbie S. Taylor's car with the permission of Debbie's daughter, Heather A. Taylor. He got into a single-vehicle accident when he ran off the road under a railway overpass. Two of his passengers, Jake and Joyce, sustained injuries. A third passenger, Jerry L. Jeffers, died.

Debbie had an automobile insurance policy with Progressive. On February 10, 2005, Progressive filed a complaint for interpleader and declaratory judgment, in which it tendered the entire $50,000 liability coverage to the trial court for distribution to the injured passengers. The combined losses of the passengers far exceeded $50,000.

In October 2005, the parties agreed that the $50,000 should be divided

among the passengers in the same proportion that each passenger's medical expenses bore to the total medical expenses of the passengers. Joyce, the estate of Jeffers, and Heather Taylor received $16,000 apiece, and the remaining $2,000 went to Jake, who was less seriously injured. Also by agreement, Joyce paid Carle 40% of his allotment of $16,000 (or $6,400) pursuant to section 10(a) of the Health Care Services Lien Act (770 ILCS 23/10(a) (West 2004)). According to a docket entry of December 19, 2005, the parties informed the trial court that "the only remaining [dispute was] as to the medical payments involving [d]efendants Jake and Joyce."

On January 6, 2006, Carle filed a supplemental counterclaim, alleging it had provided medical treatment to Jake and Joyce for injuries they had sustained in the automobile accident and, as a consequence, they owed Carle more than $5,000 apiece. (Joyce still owed Carle more than $5,000 after her payment of 40% of the $16,000 to Carle.) Debbie's insurance policy provided medical-payments coverage of $5,000 per person--over and above the $50,000 in liability coverage that Progressive had tendered to the trial court. Carle alleged:

"10. *** [M]edical[-]payments coverage is intended to
pay medical bills of the injured parties[] and should be
turned over to Carle *** for application [toward] the [medi-
cal debts that Jake and Joyce owe Carle].

11. [Jake and Joyce,] through their respective attor-
neys, have failed and refused to turn over the
medical[-]payments coverage proceeds.

12. *** [T]he respective attorneys for [Jake and Joyce]

- 3 -

improperly claim that they are entitled to a one-third portion of the medical[-]payments funds as an attorney fee." Carle requested a judgment against Jake and Joyce "for turnover of the medical[-]payments coverage proceeds" to Carle so that Carle could apply the proceeds against their medical bills.

In their reply to the supplemental counterclaim, Jake and Joyce alleged that they had offered to pay Carle 40% of the $5,000 checks in accordance with section 10(a) of the Health Care Services Lien Act (770 ILCS 23/10(a) (West 2004)) but that Carle had refused to accept only 40% and demanded 100% of the checks. They contended that Carle had a lien no greater than 40%. See 770 ILCS 23/10(a) (West 2004).

On June 19, 2006, Carle filed a motion for summary judgment on its supplemental counterclaim. Exhibit B was a copy of Debbie's insurance policy. Part II of the policy, entitled "Medical Payments Coverage," provided as follows:

"INSURING AGREEMENT

Subject to the Limits of Liability, if you pay the premium for Medical[-]Payments Coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of bodily injury:

1. sustained by an insured person;

2. caused by an accident; and

3. arising out of the ownership, mainte-

nance[,] or use of a motor vehicle or <u>trailer</u>.

Any dispute as to the <u>usual</u> <u>and</u> <u>customary</u> <u>charge</u> will be resolved between the service provider and <u>us</u>." (Emphases in original.)

According to the declarations page of the policy, the medical-payments coverage was $5,000 per person.

Jake's attorney filed an affidavit, which included, as exhibits, his retainer agreement with Jake and the notice of lien he had received from Carle. Again, Jake's attorney alleged that he had offered Carle 40% of the medical-payments coverage but that Carle had refused anything less than 100%. Joyce's attorney filed an affidavit saying essentially the same thing.

On September 20, 2006, the trial court granted Carle's motion for summary judgment on it supplemental counterclaim. The court held as follows:

"1. *** [T]he medical[-]payments proceeds disburse-ments were automatic payments contractually required to be paid to [Jake and Joyce] pursuant to the Progressive *** policy.

2. *** [T]he [c]ommon[-][f]und [d]octrine does not apply in this matter.

3. *** [T]he [a]ttorneys' [l]iens of attorneys for [Jake and Joyce] do not attach to the medical[-]payments coverage proceeds."

The court ordered Jake, Joyce, and their attorneys to "endorse and turn[]over the

medical[-]payments coverage proceeds draft[s] in the amount of $5,000.00 to [Carle]." (Progressive had issued a $5,000 check jointly to Jake, his attorney, and Carle and another $5,000 check jointly to Joyce, his attorney, and Carle.)  Pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), the court found no just reason to delay enforcement or appeal of this judgment.

These appeals followed.

## II. ANALYSIS

### A. Health Care Services Lien Act

Sections 10(a), (b), and (e) of the Health Care Services Lien Act provide as follows:

"(a) Every health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person.  The total amount of all liens under this Act, however, shall not exceed 40% of the verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his or her claim or right of action.

(b) The lien shall include a written notice containing the name and address of the injured person, the date of the

- 6 -

injury, the name and address of the health care professional or health care provider, and the name of the party alleged to be liable to make compensation to the injured person for the injuries received. The lien notice shall be served on both the injured person and the party against whom the claim or right of action exists. *** Service shall be made by registered or certified mail or in person.

* * *

(e) Payments under the liens shall be made directly to the health care professionals and health care providers." 770 ILCS 23/10(a), (b), (e) (West 2004).

In response to Carle's motion for summary judgment, the attorneys for Jake and Joyce filed affidavits stating they had received notices of Carle's lien. It is undisputed that Carle fulfilled the notice requirements of section 10(b). Jake and Joyce continue to insist, on appeal, that Carle has a valid lien in the amount of 40% of the $5,000 checks, i.e., $2,000 out of each check. See 770 ILCS 23/10(a) (West 2004). The lien "attach[es] to any *** settlement *** secured by or on behalf of the injured person." 770 ILCS 23/20 (West 2004). The term "settlement" includes a "[p]ayment, satisfaction, or final adjustment." Black's Law Dictionary 1377 (7th ed. 1999). The $5,000 checks from Progressive were a settlement of its contractual obligation under the medical-payments coverage of its policy. Therefore, Jake and Joyce reason, Carle's lien attached to those checks to the extent of 40%. See 770 ILCS 23/10(a) (West 2004).

Ironically, Carle disagrees with Jake and Joyce that it has a lien under

section 10 of the Health Care Services Lien Act (770 ILCS 23/10 (West 2004)).  It is unclear why Carle thinks it has no lien.  Carle states, in its brief, that it "filed [notices of] liens pursuant to the Health Care Services Lien Act."  Section 10(a) provides:  "Every *** health care provider that renders any service in the treatment *** of an injured person *** shall have a lien upon all claims *** of the injured person for the amount of the *** health care provider's reasonable charges ***."  770 ILCS 23/10(a) (West 2004).  The statute does not specially define "claim," so we give the word its ordinary meaning.  See Wauconda Fire Protection District v. Stonewall Orchards, LLP, 214 Ill. 2d 417, 430, 828 N.E.2d 216, 223-24 (2005).  A "claim" includes "a right to something."  Merriam-Webster's Collegiate Dictionary 210 (10th ed. 2000).  Carle admits that, as insured persons, Jake and Joyce had a contractual right to receive $5,000 apiece from Progressive under the medical-payments coverage of Debbie's policy; thus, they each had a "claim" to $5,000.  It is undisputed that Carle rendered medical treatment to each of them, with an unpaid balance of more than $5,000, and that Carle served the required notices of its lien.  Therefore, Carle has a lien on the $5,000 checks--but only to the extent of 40%.  See 770 ILCS 23/10(a) (West 2004).

B. Carle's Claim to 100% of the Checks

As Carle points out, just because section 10(a) of the Health Care Services Lien Act limits it lien to 40% of the "settlement" (see 770 ILCS 23/10(a) (West 2004)), it does not follow that Carle is precluded from collecting the rest of the indebtedness from Jake and Joyce.  Section 45 provides:

"Nothing in this Act shall be construed as limiting the
right of a health care professional or health care provider, or

- 8 -

attorney, to pursue collection, through all available means, of its reasonable charges for the services it furnishes to an injured person. Notwithstanding any other provision of law, a lien holder may seek payment of the amount of its reasonable charges that remain not paid after the satisfaction of its lien under this Act." 770 ILCS 23/45 (West 2004).

Carle reasons as follows: "[T]he request for turn[]over of [the medical-payments] proceeds conforms with the intent of medical[-]payments coverage in reimbursing medical providers for services rendered to injured (and insured) parties involved in automobile accidents. Thus, the trial court properly ordered the turnover of the medical[-]payments proceeds." This reasoning is defective. Just because Progressive was contractually obligated to pay Jake and Joyce $5,000 apiece to help them defray their medical bills, it does not follow that the medical provider, Carle, has an ownership interest in the specific funds that Progressive paid to Jake and Joyce (beyond the 40% lien). Carle is not an insured under Debbie's policy. Apparently, Jake and Joyce have a contract with Carle whereby they promised to pay for medical treatment. The record appears to contain no evidence, however, that they ever made a promise to Carle that they would pay their medical bills out of any particular fund. They would be perfectly entitled, for instance, to deposit 60% of the $5,000 checks into a bank, sell some personal property, and pay Carle out of the sale proceeds.

If patients fail or refuse to pay their medical bills, the medical provider may bring an action for breach of contract or quasi-contract and obtain a money judgment. <u>Victory Memorial Hospital v. Rice</u>, 143 Ill. App. 3d 621, 623, 493 N.E.2d 117,

118-119 (1986). Generally, however, apart from a lien under the Health Care Services Lien Act, the medical provider would have to pursue postjudgment collection to obtain an interest in any particular <u>res</u>. See 24 Ill. Jur. <u>Civil Procedure</u> §§10:10, 10:11, 10:13 (2001) (discussing, <u>e.g.</u>, garnishment, wage deduction, levy and execution, and recording the judgment).

### B. Carle as a Joint Payee of the Checks

In the present case, Carle was a joint payee of the $5,000 checks. The parties do not discuss the legal significance of that fact. If a check has joint payees, what is the ownership interest of each payee in the proceeds of the check? The cases we found are old and sparse, but it appears that the issuance of an instrument to joint payees creates a presumption that each payee has an equal ownership interest in the instrument. <u>Herring v. Woodhull</u>, 29 Ill. 92, 99 (1862); <u>People v. Varel</u>, 351 Ill. 96, 100, 184 N.E. 209, 211 (1932). Like all presumptions, this presumption can be rebutted by evidence to the contrary. <u>Varel</u>, 351 Ill. 2d at 100, 184 N.E.2d at 211; <u>Sturdyvin v. Ward</u>, 336 Ill. 594, 601, 168 N.E. 666, 669 (1929). Thus, the presumption is that Carle, as one of three joint payees, has merely a one-third interest in the two $5,000 checks. The record rebuts that presumption with evidence that Carle has a lien of 40% pursuant to section 10(a) of the Health Care Services Lien Act (770 ILCS 23/10(a) (West 2002)). Beyond that lien, Carle has no claim to <u>the</u> <u>specific</u> <u>proceeds</u> of these checks.

### C. Attorneys Lien Act

Carle argues that Jake's and Joyce's attorneys have no attorney lien on the $5,000 checks because the record contains no evidence that they served Progressive with a notice of their lien by registered or certified mail, as section 1 of the Attorneys

Lien Act required.  See 770 ILCS 5/1 (West 2004).  Because an attorney lien is a creature of statute, courts strictly construe the statute authorizing the lien, both as to establishing the lien and enforcing it.  People v. Philip Morris, Inc., 198 Ill. 2d 87, 95, 759 N.E.2d 906, 911 (2001).  "Attorneys who do not strictly comply with the [Attorneys Lien] Act have no lien rights."  Philip Morris, 198 Ill. 2d at 95, 759 N.E.2d at 911.  For example, an attorney who mails a notice of lien by ordinary mail, instead of by registered or certified mail, has no lien.  Cazalet v. Cazalet, 322 Ill. App. 105, 109, 54 N.E.2d 61, 63 (1944).  The record appears to contain no evidence that Jake's and Joyce's attorneys served a notice of lien upon Progressive by registered or certified mail.  Therefore, they have not created a genuine issue of fact as to whether they have an attorney lien on the $5,000 checks.

### D. The Common-Fund Doctrine

Jake argues:  "Based on the actions of [Jake's] attorney, a [f]und was created for [Jake], subject to the [c]ommon[-][f]und [d]octrine.  [Carle] has cited no case or statutory law that exempts the medical[-]payment proceeds from the [c]ommon[-][f]und [d]octrine."  The first question is whether Jake, as appellant, has cited any authority for his assertion that the proceeds of the medical-payments coverage are subject to the common[-]fund doctrine.  He has not.  "Mere contentions, without argument or citation of authority, do not merit consideration on appeal."  Elder v. Bryant, 324 Ill. App. 3d 526, 533, 755 N.E.2d 515, 521-22 (2001).  Jake does not explain what the common-fund doctrine is or the requisites for its application.  He has forfeited this issue.

### III. CONCLUSION

For the foregoing reasons, we modify the trial court's judgment to require

Jake and Joyce to deliver only 40% of the proceeds of the two $5,000 checks to Carle in satisfaction of Carle's lien under section 10(a) of the Health Care Services Lien Act (770 ILCS 23/10(a) (West 2004)). Otherwise, we affirm the judgment.

Affirmed as modified.

MYERSCOUGH and TURNER, JJ., concur.