# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *McRoberts v. Porter*, 2013 IL App (5th) 120017

---

| | |
|---|---|
| Appellate Court Caption | DAVID McROBERTS, Individually and as Father of Kaitlin McRoberts, a Minor, and KIM McROBERTS, Plaintiff-Appellants, v. TONI PORTER, Special Administrator of the Estate of Lori Maramba, Deceased, Defendant (Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale and St. Joseph Memorial Hospital, Respondent-Appellee). |
| District & No. | Fifth District<br>Docket No. 5-12-0017 |
| Filed | June 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent medical providers' health care services liens attached to plaintiffs' underinsured-motorist benefits and respondents were entitled to 40% of those benefits, since the benefits are similar to claims or settlements, and the Health Care Services Lien Act provides that health care providers shall have a lien that shall not exceed 40% of the award or settlement secured by the injured person or persons on the claim. |
| Decision Under Review | Appeal from the Circuit Court of Perry County, No. 11-L-22; the Hon. James W. Campanella, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

John D. Alleman, of Alleman & Hicks, of Carbondale, for appellants.

John R. Daly, of Southern Illinois Hospital Services, of Carbondale, for appellee.


Panel

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Spomer and Justice Cates concurred in the judgment and opinion.


**OPINION**


¶ 1     The only issue presented in this case is whether a health care services lien attaches to underinsured-motorist benefits.


¶ 2                                    FACTS

¶ 3     The accident that forms the basis of the issue involving liens and insurance benefits occurred on November 5, 2009, in Murphysboro. A vehicle driven by Lori Maramba crossed the centerline and struck a vehicle driven by David McRoberts. Kaitlin, a minor, and Kim McRoberts were passengers. David, Kaitlin, and Kim all sustained bodily injuries and damages.

¶ 4     The liability insurance limit available was $50,000. The plaintiffs collected those benefits. Additionally, underinsured-motorist benefits were available to the McRoberts. The underinsured-motorist benefits were another $50,000. The record does not contain a breakdown of which plaintiff or plaintiffs received medical services and incurred bills. The total amount of medical bills incurred by the McRoberts for care following this accident was in excess of $321,000.

¶ 5     Several health care providers properly filed liens in compliance with the Health Care Services Lien Act (770 ILCS 23/1 to 999 (West 2008)). The plaintiffs filed a petition to adjudicate medical liens on December 1, 2011.

¶ 6     The trial court held a hearing on the petition on December 9, 2011. Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale and St. Joseph Memorial Hospital, filed a written response to the petition and to a memorandum of law filed by the plaintiffs. The trial court considered both memoranda and on January 4, 2012, entered its order. The court found that the Health Care Services Lien Act provided that 40% of the settlement amount of $50,000 was to be disbursed in proportional shares to five of the lienholders who had filed an appearance with the court. The court allocated $20,000 of the $50,000 in underinsured-motorist benefits amongst those five lienholders. The court also entered a

-2-

second order on January 5, 2012, which analyzed the issue of application of the Health Care Services Lien Act to underinsured-coverage proceeds. The court found that there were no cases directly on point. The court noted that the cases that the defendants cited from other jurisdictions allowing application of a lien to underinsured-coverage proceeds were based upon statutes with far more restrictive language than that contained within the Illinois Act. The trial court held that the phrase "all claims and causes of action" was determinative of the issue and that the legislature meant to include underinsured-coverage proceeds.

¶ 7 The trial court included language in the orders to ensure that the rulings were final and appealable. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). From these two orders, the plaintiffs appeal.

¶ 8            LAW AND ANALYSIS

¶ 9 Interpretation of statutory language presents a question of law, subject to *de novo* review. *People v. Collins*, 214 Ill. 2d 206, 214, 824 N.E.2d 262, 266 (2005). We must give effect to the legislative intent as our main objective in considering and determining the meaning of statutory language. *Id.* While we must look at the words chosen by the legislature in order to ascertain its intent, we must also consider the purposes behind the statute. *Id.* The actual words chosen by the legislature are the best indication of the intent of the legislature. *Id.*

¶ 10 The plaintiffs contend that because the Health Care Services Lien Act is a creature of statute, its liens are limited in operation to the terms included in the statute. *Gaskill v. Robert E. Sanders Disposal Hauling*, 249 Ill. App. 3d 673, 676-77, 619 N.E.2d 235, 237-38 (1993). The defendants argue that although the liens did not exist at common law, the legislature maintains the power to provide for liens to secure debts. *Id.* Furthermore, lien laws are liberally construed. *Id.* at 677, 619 N.E.2d at 238.

¶ 11 The Illinois Health Care Services Lien Act provides that any health care professional and/or provider:

> "that renders any service in the treatment, care, or maintenance of an injured person *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person. The total amount of all liens under this Act, however, shall not exceed 40% of the verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his or her claim or right of action." 770 ILCS 23/10(a) (West 2008).

¶ 12 We turn to the language of section 20 of the Health Care Services Lien Act, which is at issue in this case:

> "The lien of a health care professional or health care provider under this Act shall, from and after the time of the service of the lien notice, attach to any verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person." 770 ILCS 23/20 (West 2008).

¶ 13 We agree with the trial court's assessment of the words chosen by the legislature and concur that the apparent intent was inclusive. The language utilized is not confusing. The lien

attaches to "any" award, settlement, or compromise.

¶ 14    The Health Care Services Lien Act does not define the words "award," "settlement," and "compromise." The plaintiffs define these terms in their brief without reference to any source material. The plaintiffs contend that the word "settlement" only occurs in reference to a lawsuit which had not gone to judgment or was going to be filed. The plaintiffs define "award" as the decision of an arbitrator or commissioner. The plaintiffs define "compromise" as "an agreement between two opposing parties to settle a dispute or reach a settlement in which each gives some ground, rather than continue the dispute or go to trial." With these "definitions," the plaintiffs contend that a lien cannot be applied to a contractual payment from an insurance company to their beneficiary. The plaintiffs cite no authority for this statement.

¶ 15    While we find that the words of the statute are not ambiguous, and that the statute was written to encompass any claims, awards, and settlements received by the party who received medical services, we are also guided by the appellate court's opinion in *Progressive Universal Insurance Co. of Illinois v. Taylor*, 375 Ill. App. 3d 495, 874 N.E.2d 910 (2007).

¶ 16    In *Progressive Universal Insurance*, two passengers in a vehicle were injured in an accident. *Id.* at 496, 874 N.E.2d at 911. A third passenger in the car died. *Id.* The vehicle was insured by Progressive Universal Insurance Company of Illinois. *Id.* Liability coverage with Progressive Universal was $50,000. *Id.* Applicable medical-payments coverage with Progressive was $5,000 per person. *Id.* Liens were filed by two medical providers, Carle Foundation Hospital and Carle Clinic Association, pursuant to the Health Care Services Lien Act. *Id.* Both Carle providers provided medical treatment to the plaintiffs, for which balances were owed. *Id.* The parties agreed to the division of the $50,000 liability policy and to recognition of the health care services lien filed by the medical providers. *Id.*, 874 N.E.2d at 911-12. The only remaining issue to be determined involved the medical payments. *Id.*, 874 N.E.2d at 912. Both passengers still owed the Carle health care providers more than $5,000, even after application of funds from the liability insurance proceeds. *Id.* at 497, 874 N.E.2d at 912. The passengers offered to pay the Carle providers 40% of the $5,000 coverage, but that offer was refused. *Id.* These two medical providers sought to have the medical-payments coverage checks endorsed over to them in payment of their bills. *Id.* The court granted summary judgment in favor of the two Carle medical providers, which required the plaintiffs to endorse the checks over to the providers. *Id.* at 498, 874 N.E.2d at 913.

¶ 17    In analyzing the health care services lien, the court found that the medical-payments coverage fell under the category of a "claim." *Id.* at 499-502, 874 N.E.2d at 914-16. The court noted that the Health Care Services Lien Act did not define the word "claim," and so the court gave the word its ordinary meaning as " 'a right to something.' " *Id.* at 499, 874 N.E.2d at 914 (quoting Merriam-Webster's Collegiate Dictionary 210 (10th ed. 2000)). The court found that it was undisputed that the Carle medical providers rendered treatment to the two passengers, that they had unpaid balances of more than $5,000, and that the Carle providers properly served liens pursuant to the Health Care Services Lien Act. *Id.* The court concluded that the Carle medical providers had a lien on the $5,000 checks, but only to the extent of 40% as provided for in the Health Care Services Lien Act. *Id.*

¶ 18      We find that the underinsured-motorist coverage in this case is analogous to and should be construed identically to medical-payments coverage. Both are insurance policy contractual provisions. Both involve claims, using the definition cited by the court in *Progressive Universal Insurance*–"a right to something." Additionally, the Health Care Services Lien Act also provides that liens attach to settlements. 770 ILCS 23/20 (West 2008). The word "settlement" is defined to include a "[p]ayment, satisfaction, or final adjustment." Black's Law Dictionary 1377 (7th ed. 1999). Resolution of claims made pursuant to either type of contractual insurance provision may properly be labeled as a "settlement" to which a lien can attach. In this case, the defendants provided medical care to the plaintiffs, and the bills associated with that care exceeded the underinsured-motorist coverage total. The defendants perfected their liens pursuant to the Health Care Services Lien Act. We conclude that the trial court correctly held that the defendants were entitled to 40% of the underinsured-motorist coverage. 770 ILCS 23/10(a), 20 (West 2008).

¶ 19                                    CONCLUSION

¶ 20      For the foregoing reasons, the judgment of the circuit court of Perry County is hereby affirmed.

¶ 21      Affirmed.