(Nos. 90185, 90186 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PHILIP MORRIS, INC. (Hagen & Berman *et al.*, Appellees).

*Opinion filed October 18, 2001.—Rehearing denied December 3, 2001.*

McMORROW, J., took no part.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Don R. Sampen, Assistant Attorney General, of Chicago, of counsel), and Jerold S. Solovy, Anton R. Valukas and Barry Levenstam, of Jenner & Block, Special Assistant Attorneys General, of Chicago, for the People.

Clifford Law Offices (Robert A. Clifford and Robert P. Sheridan, of counsel), Ungaretti & Harris (J. Timothy Eaton, of counsel), and Hedlund, Hanley & Trafelet (Reuben L. Hedlund and Dean M. Trafelet, of counsel), all of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

The questions presented for review are: (1) does a circuit court have jurisdiction to adjudicate an attorney's lien against the proceeds of a settlement where the State of Illinois was the plaintiff in the underlying action and where the settlement funds have never come into the possession or control of the state; and (2) did the circuit court of Cook County abuse its discretion in this case by establishing an escrow account to hold disputed attorney fees pending adjudication of an attorney's lien? We answer the first question in the affirmative. We do not answer the second question because it is premature.

## BACKGROUND

This cause is before us following a motion to dismiss pursuant to sections 2—619(a)(1) and (a)(9) of the Code

of Civil Procedure (735 ILCS 5/2—619(a)(1), (a)(9) (West 1998)). In ruling on a section 2—619 motion to dismiss, the trial court may consider pleadings, affidavits, and other proof presented by the parties. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 486 (1993); *Bloomingdale State Bank v. Woodland Sales Co.*, 186 Ill. App. 3d 227, 232 (1989); see generally 4 R. Michael, Illinois Practice § 41.8 (1989). The record contains the following facts.

In April 1996, the Attorney General of Illinois began to consider filing a civil lawsuit on behalf of the state against tobacco companies. Throughout the summer and fall of 1996, the Attorney General interviewed a number of law firms to represent Illinois in its suit against the tobacco industry.

The Attorney General chose the following law firms for the position of "national counsel," who would supervise tobacco lawsuits in multiple states: Hagens & Berman, the law offices of Steven C. Mitchell, Barrett Law Offices, and Lieff Cabraser Heimann & Bernstein. The Attorney General also chose the firm of Freeborn & Peters for the position of "local counsel" in Illinois' suit against the tobacco industry (firms hereafter referred to collectively as "Illinois Special Counsel" or "ISC"). The ISC were hired based on their expertise, professional reputations, and their willingness to represent the state for a contingent fee.

On September 17, 1996, the Attorney General announced that Illinois would join other states in suing tobacco companies. The lawsuit sought to recover Illinois' share of billions of dollars spent to treat smoking-related illnesses. The Attorney General predicted a long fight in Illinois courts and conceded that the suit was "not a dead-bang winner." He wanted to ensure that Illinois would be included in any possible settlements with tobacco companies. He explained that his office would at-

tempt to cover the expenses of the costly suit by, *inter alia*, "asking private law firms to work on the case free."

On September 27, 1996, the Attorney General declared that Illinois taxpayers would not pay the legal bill for his decision to sue tobacco companies. He said that the state was looking for private law firms willing to "absorb the cost of the suit and eat the cost if they don't prevail. The taxpayers aren't going to pay for it." He explained that the other states suing the tobacco industry "used outside counsel because it's an enormous undertaking. We don't have the resources within the office to do this alone."

On October 9, 1996, the Attorney General entered into a "Contract Agreement for Legal Services" with national counsel and, on November 12, entered into a similar contract with local counsel (both contracts hereafter collectively referred to as "contract"). Under the contract, which the Attorney General drafted, Illinois Special Counsel were charged with the responsibility of representing the state in litigation against the tobacco industry. The Attorney General retained "final authority over all aspects of the litigation" that affected the state's claims. Illinois Special Counsel were obligated to "consult and obtain the prior approval" of a member of the Attorney General's staff "concerning all policy and other major, substantive issues affecting the litigation."

Regarding compensation, the contract provided in pertinent part that neither the state nor the office of the Attorney General was "liable for payment of compensation otherwise than from amounts collected for the State of Illinois" and that compensation would be contingent upon recovery of monies, whether by settlement or agreement, from those liable for damages. The contingent fee would be: "Ten percent (10%) of the total recovery to the State of Illinois." Also, Illinois Special Counsel would absorb the costs of the litigation; ISC would be reimbursed only in the event of a recovery.

According to Richard Stock, the Attorney General's chief of staff: "This fee arrangement allowed the State of Illinois to pursue the tobacco industry without having to risk any taxpayer dollars on attorneys' fees or costs." At the time of the contract, the 10% contingent fee "was the lowest agreement of its kind amongst the states which had brought actions against the industry." Stock averred: "At the time it was negotiated, I and all who worked on this issue in my office believed that the ten percent was fair and reasonable based upon the risk involved."

On November 12, 1996, Illinois Special Counsel filed a complaint in the circuit court of Cook County against members of the tobacco industry. In announcing the suit, the Attorney General repeated his explanation for employing private law firms based on a contingent fee. He added: "If they lose they're paid nothing."

On November 13, 1998, the proposed settlement of the tobacco litigation was announced. On November 20, the Attorney General announced that Illinois would join in the settlement. On November 23, 1998, Illinois entered into the "Master Settlement Agreement" (MSA). Under the MSA, Illinois is to receive from the tobacco defendants approximately $9 billion, or $360 million annually for 25 years. Thereafter, the tobacco industry will continue to make payments in perpetuity based on factors such as the volume of tobacco products sold and the fiscal health of the settling private tobacco companies.

Section 17 of the MSA, with its implementing document ("Illinois Fee Payment Agreement"), provided that the tobacco defendants pay a liquidated or arbitrated fee to Illinois Special Counsel to reduce the amount of fees owed. An arbitration panel awarded ISC $121 million, which would be paid over approximately 25 years and deducted from their contingent fee.

On December 8, 1998, the circuit court approved the

MSA and entered a "Consent Decree and Final Judgment" incorporating the MSA. Under the consent decree, the circuit court retained jurisdiction over the case, including the settlement funds to be distributed by the tobacco company defendants. With limited exceptions not applicable here, section VII of the consent decree recognized that the circuit court had exclusive jurisdiction to implement and enforce the decree.

On September 28, 1999, Illinois Special Counsel served notice of their attorney's lien pursuant to the Attorneys Lien Act (770 ILCS 5/1 (West 1998)). Based on their contingent fee agreement with the Attorney General, they claimed a lien of 10% of any amount recovered from the tobacco defendants.

On December 22, 1999, Illinois Special Counsel petitioned the circuit court to adjudicate its attorney's lien. The State moved to dismiss the petition; the court denied the motion. Illinois Special Counsel moved to establish an escrow account. The court ordered the State and the tobacco defendants to direct that 10% of all settlement payments be deposited into the account pending a decision on the merits of the lien petition. In opposing the attorney's lien petition and the escrow account, the State argued that the circuit court lacked subject matter jurisdiction over the entire lien proceeding.

The State appealed from the circuit court's escrow order pursuant to Supreme Court Rule 307 (188 Ill. 2d R. 307); the appellate court dismissed the appeal. While that appeal was pending, the circuit court certified the following question for permissive interlocutory appeal (see 155 Ill. 2d R. 308):

> "Does the Circuit Court have jurisdiction to adjudicate a petition under the Attorney's Lien Act brought by counsel for the State of Illinois, against the proceeds of a settlement, where the State of Illinois was the plaintiff in the underlying action and where the settlement funds have never come into the possession or control of the State?"

The appellate court denied the State's application for leave to appeal.

We allowed and consolidated the State's separate petitions for leave to appeal from the appellate court's: (1) dismissal of the State's Rule 307 appeal; and (2) denial of the State's Rule 308 appeal (177 Ill. 2d R. 315(a)). The Coalition for Consumer Rights and the Illinois Trial Lawyers Association each sought leave to submit an *amicus curiae* brief in support of Illinois Special Counsel, which we now grant (see 155 Ill. 2d R. 345).

## DISCUSSION

The purpose of a motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)) is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a trial. Section 2—619(a)(1) allows dismissal when "the court does not have jurisdiction of the subject matter of the action," and subsection (a)(9) allows dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(1), (a)(9) (West 1998). Specifically, a section 2—619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's action much in the same way as a section 2—615 motion to dismiss admits a complaint's well-pleaded facts. Review is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115-17 (1993).

### I. Attorney's Lien

Illinois circuit courts have original jurisdiction over all justiciable matters. Ill. Const. 1970, art. VI, § 9.

The Attorneys Lien Act provides in pertinent part:

"Attorneys at law shall have a lien upon all claims *** which may be placed in their hands by their clients for suit or collection *** for the amount of any fee which may have

been agreed upon by and between such attorneys and their clients \*\*\*. To enforce such lien, such attorneys shall serve notice in writing \*\*\* upon the party against whom their clients may have such suits \*\*\* claiming such lien and stating therein the interest they have \*\*\*. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered \*\*\* from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce the lien." 770 ILCS 5/1 (West 1998).

The Act sets forth the requirements for effective liens. The attorney must have been hired by a client to assert a claim. The attorney must then perfect the lien by serving notice, in writing, upon the party against whom the client has the claim. The lien attaches from and after the time of the service of the statutory notice. *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 227 (1979).

The Act "creates new rights which have heretofore not been recognized in this State." *Standidge v. Chicago Rys. Co.*, 254 Ill. 524, 533 (1912). Since the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement. Attorneys who do not strictly comply with the Act have no lien rights. *Haj v. American Bottle Co.*, 261 Ill. 362, 366 (1913); *DeKing*, 155 Ill. App. 3d at 597; *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238, 241-42 (1961).

Once the attorney's lien is perfected, upon petition "any court of competent jurisdiction" may adjudicate the lien. 770 ILCS 5/1 (West 1998). This includes the circuit court that heard the underlying matter (*Standidge*, 254 Ill. at 533), or the circuit court that has jurisdiction over the money recovered (*McCallum v. Baltimore & Ohio R.R. Co.*, 379 Ill. 60, 68 (1942)).

In this case, the State chose to sue the tobacco defendants in the circuit court. The State hired private

attorneys and sent those attorneys into the circuit court to litigate its cause. After two years of litigation in the circuit court, the State agreed to settle its dispute with the tobacco defendants. The State then requested the circuit court to approve the settlement. The court approved the settlement that created the proceeds upon which the lien was perfected. Illinois Special Counsel complied with the Attorneys Lien Act. They perfected the lien and petitioned the circuit court to adjudicate it. The circuit court has jurisdiction to adjudicate the lien, either because it heard the underlying matter, or because it has jurisdiction over the settlement proceeds.

However, the State invokes the principle of sovereign immunity. "In the United States, sovereign immunity has been justified as a rule which embodies a policy that protects the State from interference in its performance of the functions of government and preserves its control over State coffers." *S.J. Groves & Sons Co. v. State of Illinois*, 93 Ill. 2d 397, 401 (1982).

The 1970 Illinois Constitution abolished the common law doctrine of sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. The legislature has provided that "the State of Illinois shall not be made a defendant or party in any court," except as provided in the Court of Claims Act. 745 ILCS 5/1 (West 1998). Section 8 of the Court of Claims Act provides in pertinent part that the Court of Claims shall have exclusive jurisdiction to hear and determine "[a]ll claims against the State." 705 ILCS 505/8(a), (b) (West 1998).

The State contends that jurisdiction to adjudicate the attorney's lien of Illinois Special Counsel lies not with the circuit court, but rather with the Illinois Court of Claims. That body "was, and continues to be, a part of the legislative branch of State Government." Pub. Act 83—865, § 1, eff. September 26, 1983. The Court of

Claims is not a court within the meaning of the judicial article of our state constitution (Ill. Const. 1970, art. VI); its function is not to adjudicate cases. Rather, the General Assembly established the Court of Claims to receive and resolve claims against the state. *Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72, 78 (1985); see generally *S.J. Groves & Sons*, 93 Ill. 2d at 401-02. "It is in essence the legislature—the body called upon to fund any awards—that is deciding through the Court of Claims the merits of the claims before it." *S.J. Groves & Sons*, 93 Ill. 2d at 405.

The State contends that, for several reasons, the lien petition of Illinois Special Counsel constitutes "a claim against the State." Therefore, according to the State, the Court of Claims has exclusive jurisdiction thereof. "The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992).

We cannot accept the State's contention that ISC's lien petition constitutes a claim against the State of Illinois. In its arguments, the State misapprehends the nature of an attorney's lien under the Attorneys Lien Act.

The State first argues that the attorney's lien petition of Illinois Special Counsel "is, in substance, a breach of contract action against the State." However, it is quite settled that an attorney's lien under the Act "is a lien upon the proceeds, only, of the litigation or settlement of the claim." *Baker v. Baker*, 258 Ill. 418, 421 (1913). The attorney's only interest is in the proceeds of the litigation or its settlement. *Process Color Plate Co. v. Chicago Urban Transportation District*, 125 Ill. App. 3d 885, 891 (1984). This court explained long ago:

"By serving the notice claiming a lien the attorney in effect becomes a joint claimant with his client *** in the

proceeds of any settlement that may be made by the client, and to the extent of the amount of his fee has the same interest in such proceeds *** as his client and is entitled to his *pro rata* share thereof." *Baker*, 258 Ill. at 421.

Indeed, it is settled that, outside of the Act, attorneys can still sue their clients to recover for their services. *Baker*, 258 Ill. at 421; *DeKing*, 155 Ill. App. 3d at 597.

Further, once an attorney serves proper notice of the lien on the client's adversary, that party bears responsibility for respecting the lien. If the underlying defendant does not respect the lien, then the defendant becomes liable for the attorney fees. *Sutton v. Chicago Rys. Co.*, 258 Ill. 551, 553 (1913); *Process Color Plate*, 125 Ill. App. 3d at 890. A petition under the Attorneys Lien Act is not a contract action against the attorney's client. This distinguishes the present case from cases such as *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245 (1998), which involved claims "against the State."

The State contends that the attorney's lien petition of Illinois Special Counsel constitutes "a claim against the State" for several additional reasons. The State argues that adjudication of the attorney's lien would threaten to subject the state to liability and would control the actions of the state. A suit will be considered a claim against the state if a judgment in favor of the plaintiff could operate to control the actions of the state or subject it to liability. *Currie*, 148 Ill. 2d at 158.

The State argues that the circuit court's adjudication of Illinois Special Counsel's lien subjects the state to liability. However, our discussion of the Attorneys Lien Act shows that it does not infringe on the state's statutory sovereign immunity. The defendants in the underlying litigation are charged with honoring the lien, not the state. Under no circumstances can the general funds of the state be reached to satisfy this obligation of the tobacco defendants. See *Graham v. Illinois State Toll Highway Authority*, 182 Ill. 2d 287, 297 (1998), quoting

*People v. Illinois Toll Highway Comm'n,* 3 Ill. 2d 218, 227 (1954).

Also, the State argues that the circuit court's adjudication of the attorney's lien would control the actions of the state. According to the State, a circuit court adjudication of the lien "would force the State to pay those settlement funds to [ISC] without any legislative appropriation." Again, however, the state is not appropriating any money whatsoever. The tobacco defendants, and not the state, will pay the attorney fees. This was understood and repeatedly acknowledged from the inception of the litigation.

Indeed, the whole point of contingent fee agreements is to remove from the client's shoulders the risk of being out-of-pocket for attorney fees upon a zero recovery. Instead, the lawyer assumes that risk and is compensated for it by charging what is in effect an insurance premium. See 1 G. Hazard & W. Hodes, The Law of Lawyering § 8.6, at 8—15, 8—16 (3d ed. 2001); T. Schneyer, *Legal-Process Constraints on the Regulation of Lawyers' Contingent Fee Contracts,* 47 De Paul L. Rev. 371, 374-78 (1998).

The State next argues: "Resolution of this dispute necessarily requires a determination of the State's interest in the disputed settlement funds, an inquiry that implicates the State's sovereign immunity." When property of the state is involved, the state becomes directly and adversely affected by the suit and the action must be held to be one against the state. *Sass v. Kramer,* 72 Ill. 2d 485, 491 (1978); *Hollander & Hollander v. Kamenjarin,* 201 Ill. App. 3d 799, 801 (1990).

We cannot at this juncture consider the tobacco settlement to be state funds. First, whether the payment of ISC's attorney fees would be a money judgment against the state can be determined by examining the source from which the attorney fees would be paid. See *Shell Oil Co. v. Department of Revenue,* 95 Ill. 2d 541, 547-48

(1983). In this case, the source of the attorney fees is not the state's general revenue fund, but rather is "the bank or other entity with which the fund was invested." See *Shell Oil Co.*, 95 Ill. 2d at 548.

Second, the withholding of funds from the state treasury does not automatically render a case a suit against the state. *Saltiel v. Olsen*, 85 Ill. 2d 484, 492 (1981), quoting *City of Springfield v. Allphin*, 74 Ill. 2d 117, 126 (1978). In this case, the tobacco settlement funds, which have never been in the state's hands, are not "state funds" until after ISC's attorney fees are paid and the funds go into the state treasury. See *Saltiel*, 85 Ill. 2d at 491-93. The courts of other states that participated in the tobacco settlement have reached this conclusion. See *Philip Morris Inc. v. Glendening*, 349 Md. 660, 681, 709 A.2d 1230, 1240-41 (1998); accord *Conant v. Robins, Kaplan, Miller & Ciresi*, 603 N.W.2d 143, 149 (Minn. App. 1999).

We note the State's attempt to show that the State of Illinois, and not the tobacco defendants, is "the true target" of Illinois Special Counsel's attorney's lien. The State points to sections 3 and 4 of the Illinois Fee Payment Agreement, which provide essentially that ISC waive all future claims against the tobacco defendants in exchange for the attorney fees received pursuant to the agreement. The State reasons: "If [ISC] are correct, however, and their claim for attorneys' fees pursuant to their attorney's lien is truly a claim against the Tobacco Defendants, then that lien must be dismissed with prejudice because [ISC] irrevocably waived that claim under IFPA §§ 3 and 4." (Emphasis omitted.) ISC counters that, pursuant to section 5 of the agreement, their arbitrated fee has no effect on their contingent fee contract with the State.

This is an issue for the circuit court at the adjudication of ISC's attorney's lien, not for this court in the

present appeal. We conclude that the circuit court has jurisdiction to adjudicate the attorney's lien of Illinois Special Counsel. Accordingly, we answer the certified question in the affirmative.

## II. Escrow Order

The circuit court established an escrow account and ordered that 10% of all settlement payments be deposited there until further order. The State appealed from the circuit court's order pursuant to Supreme Court Rule 307(a)(1), which allows interlocutory review of an order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." 188 Ill. 2d R. 307(a)(1). The appellate court dismissed the State's interlocutory appeal.

Before this court, the State initially contends that since the circuit court lacked jurisdiction to adjudicate Illinois Special Counsel's attorney's lien, then the court necessarily lacked jurisdiction to enter the escrow order. However, our above-stated answer to the certified question disposes of this contention.

The State next characterizes the escrow order as injunctive in nature. Based on that characterization, the State contends that the circuit court abused its discretion in entering the escrow order because Illinois Special Counsel did not satisfy the requirements for a preliminary injunction.

"To determine what constitutes an appealable injunctive order under Rule 307(a)(1) we look to the substance of the action, not its form. *** Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else." *In re A Minor*, 127 Ill. 2d 247, 260 (1989). "Ministerial" or "administrative" orders of the circuit court, *i.e.*, orders that regulate only the procedural details of litigation before the court, cannot be the subject of an interlocutory appeal. Such orders do not affect the relationship of the parties in their ev-

eryday activity apart from the litigation and, therefore, are distinguishable from traditional forms of injunctive relief. *In re A Minor*, 127 Ill. 2d at 262.

A majority of the cases ruling on the question have held that an order directing the payment of money into court is not appealable. The most common reason for denying an appeal from such orders is that they are merely interim orders, designed to preserve a fund until rights to it can be established; they are not orders establishing such rights. *In re Estate of Basile*, 32 Ill. App. 3d 618, 620 (1975), citing Annotation, *Appealability of Order Directing Payment of Money Into Court*, 15 A.L.R.3d 568, 570 (1967).

In the present case, the record shows that this was the circuit court's view of the escrow order. The court reasoned: "I think an escrow should be established because it would simplify the process here." The court further noted: "Nobody won here today, nobody lost here today, it's just a simple matter of bookkeeping and accounting, as far as I'm concerned." We hold that the appellate court did not err in dismissing the State's interlocutory appeal of the circuit court's escrow order.

## CONCLUSION

In sum, Illinois Special Counsel's lien proceeding is not a claim against the State of Illinois. Rather, it is a statutory claim against a fund of monies to be paid by private defendants. The circuit court may adjudicate the claim against the fund. Further, because the source of the fund at issue is not the state treasury, sovereign immunity is not implicated. Accordingly, the circuit court, and not the Court of Claims, is the proper forum to adjudicate the attorney's lien.

For the foregoing reasons, the question certified by the circuit court of Cook County is answered in the affirmative. We do not address the propriety of the trial court's escrow order, as it is premature. The cause is

remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Certified question answered;*
*cause remanded.*

JUSTICE McMORROW took no part in the consideration or decision of this case.