# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Estate of McFadden*, 2011 IL App (2d) 101157

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF IAN A.F. McFADDEN, a Minor (Tara Fuller, as Guardian of the Estate, Petitioner-Appellee, v. Kim MacCloskey and Associates, Respondent-Appellant). |
| District & No. | Second District <br> Docket No. 2-10-1157 |
| Filed | December 30, 2011 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to adjudicate respondent attorney's lien for representing petitioner's son in a personal injury action, the trial court's judgment granting petitioner's request to adjudicate the lien to zero was affirmed, even though the trial court erred in finding the lien invalid, since the minor's father, purporting to act as next friend of his son, retained respondent's services to pursue the tort action, but the father had been divorced from petitioner for several years, did not have custody and was substantially behind in child support and, therefore, lacked the ability to assert a claim for his son, and although that disqualification did not invalidate respondent's lien, any work respondent did after being notified that petitioner was the appropriate party to act for the minor was done at respondent's own peril, respondent's decision to continue working was not reasonable, and in the absence of evidence of the work done, no compensation was warranted. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 07-P-362; the Hon. Lisa Fabiano, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Mary I. Wood, of Kim MacCloskey & Associates, LLP, of Rockford, for appellant. |
| | Scott A. Calkins and Arthur G. Kielty, both of Reno & Zahm LLP, for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. |
| | Justice Burke concurred in the judgment and opinion. |
| | Justice Schostok specially concurred, with opinion. |

## OPINION

¶ 1    Respondent, the law firm of Kim MacCloskey & Associates, appeals the trial court's judgment that adjudicated respondent's attorney's lien to zero and extinguished respondent's claim for attorney fees pursuant to case law and the Attorneys Lien Act (the Act). 770 ILCS 5/1 (West 2006). Respondent contends that the trial court erred in interpreting the Act and abused its discretion when it determined that, pursuant to a *quantum meruit* theory, respondent was not entitled to attorney fees. We affirm.

¶ 2    This matter stems from personal injury litigation on behalf of Ian A.F. McFadden, a minor child, whose parents divorced five years prior to the child's injury. On February 13, 2003, petitioner, Tara Fuller, and James McFadden (James) obtained a judgment for dissolution of marriage. Petitioner was awarded full custody of the couple's two children, James Jr. and Ian. As of March 1, 2003, James was ordered to pay $367 per month in child support for the benefit of the children.

¶ 3    From March 1, 2003, through April 30, 2007, James was unemployed and failed to satisfy his child support obligations. On July 18, 2007, the trial court entered an order finding that James was $21,671.75 in arrears on his child support obligations and it issued a warrant for his arrest.

¶ 4    One month later, on August 21, 2007, 10-year-old Ian sustained a broken arm and multiple skull fractures after being struck by a tree limb that fell during tree removal operations performed by Tree Care Enterprises, an agent employed by the City of Rockford. On September 4, 2007, James, purporting to act in his capacity as Ian's father and next friend, retained the services of respondent to pursue a tort action relating to Ian's injuries.

¶ 5    On September 5, 2007, respondent sent notices of attorney's liens by certified mail to Tree Care Enterprises and the City of Rockford. The notices provided, in relevant part:

"[Y]ou are hereby notified that James McFadden on behalf of his minor son, Ian McFadden, has placed in my hands, as his attorney, for suit and collection, a claim, demand or cause of action, against you growing out of personal injuries he sustained on or about August 21, 2007, as a result of negligence or other conduct. James McFadden has agreed to pay me for such services ***."

Thereafter, respondent alleges, it performed legal research regarding strict liability based on ultrahazardous activities.

¶ 6    On September 5, 2007, petitioner, also purporting to act in her capacity as Ian's parent and next friend, retained attorney Anthony Kielty (petitioner's attorney) of the Law Office of Reno & Zahm, LLP, to pursue a personal injury action on Ian's behalf. On September 6, 2007, petitioner's attorney filed on petitioner's behalf a petition for guardianship of a minor, seeking to have petitioner appointed as guardian of the estate and person of Ian for the purpose of prosecuting Ian's personal injury claim.

¶ 7    That same day, September 6, 2007, respondent filed a complaint in the trial court on behalf of James, both individually and as next friend of Ian. The complaint alleged against Tree Care Enterprises and the City of Rockford negligence, *res ipsa loquitur*, strict liability, and counts under the family expense provision of the Rights of Married Persons Act (750 ILCS 65/15 (West 2006)).

¶ 8    Also on September 6, 2007, after respondent filed the complaint, petitioner's attorney notified respondent by letter that he had been retained to represent petitioner and Ian, and he asserted petitioner's right to act as Ian's representative. The letter further informed respondent that petitioner had filed a petition for guardianship, that James was not the custodial parent of Ian, that James was substantially in arrears on his court-ordered child support obligations for Ian's benefit, and that a warrant had been issued for James's arrest in connection with his child support arrearage. The letter directed respondent to take no further action with respect to Ian's personal injury action.

¶ 9    Respondent verified the information alleged in the letter and spoke with James regarding the need to remedy the situation. Respondent provided James with the names and contact information of several attorneys who could offer James advice regarding his child support arrearage.

¶ 10   According to respondent's brief, sometime between September 10, 2007, and September 17, 2007, respondent drafted and mailed preliminary written discovery questions and performed research and investigation to obtain telephone numbers and addresses for the witnesses listed in James's discovery answers. Respondent obtained Ian's emergency room records, photographs of the injury scene, photographs of Ian during his hospital stay, and photographs of Ian after discharge. Respondent created maps of the scene, correlated to the photographs. Respondent also procured and redacted a deposition transcript from its closed files regarding a similar case against Tree Care Enterprises.

¶ 11   On September 17, 2007, the trial court appointed petitioner as guardian of Ian's estate for the express purpose of pursuing all claims that Ian might have as a result of the personal

injuries he sustained on August 21, 2007. On September 19, 2007, the trial court granted respondent's request to withdraw as counsel. On October 15, 2007, the trial court entered an order substituting petitioner's attorney in place of respondent in Ian's personal injury case. After respondent withdrew from the case, it assembled all of its work product and provided the information to petitioner's attorney.

¶ 12 Thereafter, petitioner's attorney twice amended the complaint in Ian's personal injury case and prosecuted the matter through its conclusion. On October 4, 2010, petitioner filed a petition to adjudicate respondent's attorney's lien claim. On October 15, 2010, the trial court entered an order to settle Ian's personal injury case for $800,000. On November 5, 2010, the trial court determined that respondent's lien claim was invalid and granted petitioner's request to adjudicate respondent's attorney's lien to zero and extinguish respondent's claim for attorney fees. Respondent timely appealed.

¶ 13 We first address respondent's motion to strike petitioner's brief. Respondent argues that we should strike petitioner's brief, because its facts section is argumentative. See *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 145-46 (2004) (argumentative language within the statement of facts is inappropriate and against the mandate of the supreme court rules). As respondent's motion points out, briefs that violate the aforementioned rules may be stricken in whole or in part, or offending portions of such briefs may be disregarded. *Id.* at 146. Thus, as we will disregard any argumentative portions of petitioner's brief, there is no need to strike the brief. We therefore deny respondent's motion.

¶ 14 At issue in this appeal is whether the trial court erred when it found that respondent's attorney's lien claim was invalid, adjudicated respondent's attorney's lien to zero, and extinguished respondent's claim for attorney fees. Respondent argues that (1) the trial court erred in adjudicating respondent's attorney's lien to zero and extinguishing respondent's claim for attorney fees pursuant to the Act and (2) the trial court abused its discretion when it determined that, pursuant to a *quantum meruit* theory, respondent was not entitled to attorney fees. Petitioner responds that the trial court correctly adjudicated respondent's attorney's lien to zero and extinguished the claim, because James did not have standing to sue on Ian's behalf.

¶ 15 Respondent's first argument is that the trial court erred in adjudicating respondent's attorney's lien to zero and extinguishing respondent's claim for attorney fees pursuant to the Act. Specifically, respondent argues that it strictly complied with all the requirements of the Act and thus has a valid lien. Petitioner responds that, because James did not have standing to sue on Ian's behalf, pursuant to the language of the Act, respondent could not meet its requirements. As to the construction of the Act, our review is *de novo*. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010).

¶ 16 The Act provides:

"§ 1. Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the

-4-

services of such suits, claims, demands or causes of action, plus costs and expenses. In the case of a claim, demand, or cause of action with respect to which the total amount of all liens under the Health Care Services Lien Act meets or exceeds 40% of the sum paid or due the injured person, the total amount of all liens under this Act shall not exceed 30% of the sum paid or due the injured person. All attorneys shall share proportionate amounts within this statutory limitation. If an appeal is taken by any party to a suit based on the claim or cause of action, however, the attorney's lien shall not be affected or limited by the provisions of this Act.

To enforce such a lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce the lien." 770 ILCS 5/1 (West 2006).

¶ 17    The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Solon*, 236 Ill. 2d at 440. The best indicator of legislative intent is the language of the statute, which is given its plain and ordinary meaning. *Id.* When the statutory language is clear and unambiguous, it must be applied as written. *Id.* In interpreting statutory language, courts will not read into it exceptions, limitations, or conditions that are absent from the plain language of the law. *Id.* at 441. These general principles regarding statutory interpretation apply to the Act, which "must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001).

¶ 18    In the current matter, respondent argues that it met the three general requirements for a valid attorney's lien. Specifically, respondent asserts that James placed a cause of action in the hands of respondent, that written notice of the lien was provided to the opposing parties, and that such written notice was sent by certified mail. See 770 ILCS 5/1 (West 2006). Petitioner counters that respondent failed to meet the requirements of the Act because respondent was not hired by a client with an ability to assert a claim. Specifically, petitioner argues that the attorney asserting the lien must perfect the lien by serving written notice upon the party against whom the client has a claim. See 770 ILCS 5/1 (West 2006); see also *Philip Morris, Inc.*, 198 Ill. 2d at 95 (citing *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 227 (1979)). According to petitioner, as James was not the guardian of Ian's estate, he had no cause of action against the opposing parties in Ian's personal injury case, and thus respondent could not perfect the lien by serving notice on Tree Care Enterprises and the City of Rockford.

¶ 19    We determine that respondent met the requirements of the Act pursuant to a strict construction of its language. Respondent was hired by James, who placed a cause of action, namely, Ian's personal injury suit, in respondent's hands. *Taylor*, 375 Ill. App. 3d at 501.

Respondent sent notice of the lien to the opposing parties by certified mail. Although petitioner argues that, because James was later found unauthorized to sue on Ian's behalf, respondent failed to perfect the lien because it did not serve written notice of the lien upon the "party against whom the client has a claim," the language of the Act does not support petitioner's claim. Instead, the Act provides:

> "To enforce such a lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients *may* have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." (Emphasis added.) 770 ILCS 5/1 (West 2006).

While James was later found without standing to assert a personal injury claim on behalf of Ian, the language of the Act does not make a distinction between a client who has a *bona fide* claim and a client who mistakenly believes that he or she has a claim. To the contrary, the language of the Act states that "service may be made by registered or certified mail, upon the party against whom their clients *may* have" a claim. (Emphasis added.) *Id.* Thus, pursuant to the language of the Act, respondent's lien is valid.

¶ 20    Petitioner next asserts that, because respondent was not hired by Ian, the act of filing a notice of lien was insufficient to create a lien under the Act. See *In re Chicago Flood Litigation*, 289 Ill. App. 3d 937, 943 (1997). Citing case law from the 1940s, petitioner contends that a minor may make a valid contract by himself or through his next friend to hire an attorney to prosecute a lawsuit and may agree to pay reasonable compensation. *Yellen v. Bloom*, 326 Ill. App. 134, 142 (1945); *Goldberg v. Permutter*, 308 Ill. App. 84, 87 (1941). However, according to petitioner, because James was unauthorized to act as Ian's next friend, any contract entered into between James and respondent is void *ab initio*. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164 (2004).

¶ 21    Petitioner further asserts that, due to a conflict of interest, James could not pursue any claim on Ian's behalf. Petitioner asserts that, because James failed to pay his child support for Ian, James was prevented, as a matter of law, from suing on Ian's behalf. As Ian is a minor, he was legally unable to enter into a contract that could be enforced against him and he could not bring a lawsuit in his own name. See *Severs v. Country Mutual Insurance Co.*, 89 Ill. 2d 515, 520 (1982). With respect to the injuries Ian suffered on August 21, 2007, he could pursue litigation only through a guardian *ad litem* or "next friend." *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 298 (1997).

¶ 22    A minor with a meritorious cause of action is not left to the mercy of a self-constituted next friend to enforce the child's rights. *Severs*, 89 Ill. 2d at 520. Rather, in the case of a parent, the law holds that the parent may sue on behalf of his or her minor child only if it is in the best interests of the child and the parent does not have interests that conflict with those of the child. See *Stevenson v. Hawthorne Elementary School, East St. Louis School District*, 144 Ill. 2d 294, 301 (1991). According to petitioner, for well over 100 years, it has been the law of this state that a next friend whose interests are hostile to those of his or her ward is incompetent to act for the ward. *Roodhouse v. Roodhouse*, 132 Ill. 360 (1890). This "no conflict" requirement means that a noncustodial parent with a child support arrearage is

disqualified from serving as his or her minor child's next friend for purposes of litigating a tort claim. *Stevenson*, 144 Ill. 2d at 301-02. The *Stevenson* court stated:

> "[The father] cannot maintain an action as 'next friend' of the child and, at the same time, defend himself against the child judgment-creditor. The conflict of interest is obvious. In addition, the best interests of the child would not be served by allowing a parent who is contemptuously delinquent to prosecute a tort claim as 'next friend.' " *Id.*

¶ 23 Respondent does not dispute that a father who is delinquent in child support payments cannot act as next friend to pursue a tort claim on behalf of his child. Instead, respondent argues that *Stevenson* does not stand for the proposition that an attorney hired by a delinquent father is not authorized to file a suit, cannot hold a valid attorney's lien, and is not entitled to be compensated for his or her services.

¶ 24 Respondent asserts that this is a question of standing and offers as instructive *Dyer v. Zoning Board of Appeals*, 179 Ill. App. 3d 294 (1989). In *Dyer*, the plaintiff landowners who filed suit to reverse a zoning determination were found to lack standing to pursue the claim. *Id.* at 298-300. The defendants brought a motion for sanctions against the plaintiffs, alleging that the finding of a lack of standing and the subsequent dismissal of the plaintiffs' complaint indicated that the allegations in the complaint were "baseless and not warranted by existing law." *Id.* at 301. The appellate court upheld the trial court's holding and determined that the plaintiffs had a reasonable basis for their argument in favor of standing, despite their ultimate lack of success. *Id.* at 302-03. Respondent asserts that *Dyer* stands for the principle that a court's ultimate decision on a party's standing is not a *per se* finding that the cause of action was improper and thus a barrier to recoup fees. Petitioner responds that the case is inapplicable because, here, the trial court did not sanction respondent.

¶ 25 In the current matter, although the trial court ultimately found that respondent was not hired by a party with the ability to assert a claim on Ian's behalf, this does not mean that respondent's attorney's lien was invalid. Assessment of a client's standing is not a requirement of the Act. See 770 ILCS 5/1 (West 2006). Instead, attorney's liens are invalidated only for failure to strictly follow the plain language of the Act. See *Rhoades*, 78 Ill. 2d at 227 (holding that an attorney's lien was invalid because notice of the lien was served on the adverse party after the attorney was discharged); also see *Progressive Universal Insurance Co. of Illinois v. Taylor*, 375 Ill. App. 3d 495, 501 (2007) (holding that an attorney's lien was invalid because notice of lien was sent by ordinary mail rather than registered or certified mail). Petitioner does not offer and we are unable to locate any case law holding that a client's eventual disqualification from acting as a next friend invalidates an attorney's lien. Thus, we determine that the trial court erred when it determined that respondent's lien was invalid.

¶ 26 Respondent's next contention is that the trial court abused its discretion when it determined that, pursuant to a *quantum meruit* theory, respondent was not entitled to attorney fees. Despite respondent's contention, the record reflects that the trial court did not reach the question of whether respondent was entitled to attorney fees pursuant to a *quantum meruit* theory. Specifically, in making its determination that respondent's lien was invalid, the trial court stated:

"Ultimately, [respondent] did not have the reason; did not have the ability to bring the claim, and I don't think that [respondent] can then have an attorney's lien when [respondent] had a client; a contract with a client who had no right to bring the claim. The *quantum meruit* I don't have to get into, so I won't."

Thus, we determine that respondent's second contention is unfounded.

¶ 27       Although we have determined that respondent's lien was valid pursuant to strict statutory construction, we note that respondent was on notice that its client might not have been authorized to bring the personal injury claim on Ian's behalf as of September 6, 2007, when respondent received the letter from petitioner's attorney informing respondent that due to James's child support arrearage he was unable to act as next friend to Ian. Respondent's brief makes clear that, upon receiving the letter, it verified the information alleged and spoke with James regarding the need to remedy the situation. Nevertheless, respondent continued working on Ian's personal injury claim until September 17, 2007, when the trial court determined that petitioner was the appropriate party to act as Ian's next friend.

¶ 28       We determine that any work done by respondent after September 6, 2007, when it received notice that James was not authorized to file suit on Ian's behalf, was done at respondent's own peril. We will not award fees to respondent for work done after respondent was aware that James could not pursue the action on Ian's behalf before paying his child support arrearage and clearing an outstanding arrest warrant. Although respondent argues that it continued working on Ian's case because of the possibility that a court would eventually find that James was authorized to sue on Ian's behalf, as respondent's brief points out, after it verified the information alleged in the letter, it told James that he would need to first remedy his child support arrearage. It is clear to this court that respondent, as of September 6, 2007, was aware that James was not authorized to act as Ian's next friend and could not pursue a claim on Ian's behalf before remedying his child support arrearage. As James's arrearage was $21,671.75 and there was an outstanding warrant for his arrest because of his substantial arrearage, we determine that respondent's choice to continue working on Ian's personal injury matter was not reasonable.

¶ 29       The amount of compensation owed to respondent for work done before it was put on notice remains undetermined. However, an exhaustive review of the record reflects that respondent failed to put forth any evidence supporting its assertion that it did work on Ian's personal injury claim. The record fails to include time sheets, billing documents, or affidavits evidencing work conducted by respondent. Respondent's bare-bones assertion of the work it claims it performed on Ian's behalf is, without more, unpersuasive. The record reflects that respondent's fee request was not based on the amount of work actually done by respondent, but instead was based on a percentage of the settlement awarded to Ian. Although we note respondent's argument that time sheets are not required in a personal injury matter where the client will ultimately pay a contingent fee, this argument does not excuse respondent's failure to evidence its work through affidavit or other means. Because respondent failed to include in the record any evidence that it performed work on Ian's personal injury suit, we determine that respondent is not entitled to any compensation from the ultimate award to Ian. See *Benson v. Stafford*, 407 Ill. App. 3d 902, 912 (2010) (holding that the appellate court can affirm on any basis in the record, regardless whether the trial court relied on that basis or its

reasoning was correct).

¶ 30      For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 31      Affirmed.

¶ 32      JUSTICE SCHOSTOK, specially concurring:

¶ 33      I agree with the majority's conclusion that the respondent is not entitled to any compensation from Ian's estate. I write separately, however, because I believe that, even if the respondent had presented detailed evidence as to how much work it had done on Ian's personal injury claim between September 4, 2007 (the day that the respondent was retained by James), and September 6, 2007 (the day that the respondent learned that James was not a proper party), the respondent would not be entitled to any compensation from Ian's estate for that time period.

¶ 34      Supreme court rules should be construed in harmony with applicable statutes whenever possible. *People v. Joseph*, 113 Ill. 2d 36, 58 (1986) (Simon, J., dissenting). Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) provides in pertinent part:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

¶ 35      Reading the Act in conjunction with Rule 137, I believe that, before the respondent purportedly did any work on Ian's behalf and sent its notice of lien, the respondent was required to do a reasonable inquiry as to James's right and ability to prosecute an action on Ian's behalf. Such a reasonable inquiry would have disclosed that (1) James and the petitioner were divorced; (2) James was not Ian's custodial parent; and (3) James was delinquent in paying child support. Upon learning this, the respondent should have realized that James had no right to prosecute an action on Ian's behalf (see *Stevenson*, 144 Ill. 2d at 301-02), and thus no *valid* cause of action had been placed in the respondent's hands by James. As no attorney fees would have been incurred on Ian's behalf had the respondent done a reasonable inquiry, the respondent should not be entitled to any compensation under the Act for work it might have done from September 4 to September 6, 2007. I would therefore affirm for the reasons stated by the trial court.