2021 IL App (1st) 201304

SIXTH DIVISION
December 10, 2021

No. 1-20-1304

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PHYLLIS JAMISON, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 19 L 000481 |
| CRISTAL MONTERO, | ) | |
| | ) | Honorable |
| Defendant, | ) | Christopher E. Lawler, |
| | ) | Judge Presiding. |
| (The Law Office of Sheila A. Genson, Ltd., Appellant). | ) | |

JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**O R D E R**

¶ 1    *Held*:   Order adjudicating attorney lien to $0 is affirmed where the appellant failed to show that notice of the lien was served on the defendant as required by statute and that the lien was properly perfected.

¶ 2    This appeal is brought by a law firm that was hired to represent plaintiff Phyllis Jamison in a personal injury case. The law firm was discharged after several weeks, and Ms. Jamison hired other counsel. Ms. Jamison ultimately recovered $10,000, and the circuit court granted her motion to adjudicate the original firm's lien against that recovery to $0. The record does not reflect the

circuit court's reason for this ruling, but it is clear from the record that the law firm did not present sufficient evidence that notice of the lien was served on the personal injury defendant in compliance with the Attorneys Lien Act (Act) (770 ILCS 5/1 *et seq.* (West 2018)). Appellant therefore failed to demonstrate that the circuit court erred in its adjudication of this lien. We affirm.

¶ 3                                              I. BACKGROUND

¶ 4    Ms. Jamison sustained injuries when, on September 23, 2018, her bicycle collided with a vehicle operated by defendant Cristal Montero, who is not a party to this appeal. On October 1, 2018, Ms. Jamison hired appellant, the Law Office of Sheila A. Genson, Ltd. (the Genson Firm), to represent her in this matter. Ms. Genson subsequently spent approximately 10 hours on the case. According to her time records, Ms. Genson met with Ms. Jamison to discuss the accident, traveled to and investigated the intersection where the accident took place, interviewed local business owners, inquired about security camera footage and 9-1-1 calls, and performed legal research.

¶ 5    On October 2, 2018, Ms. Genson sent a letter to Ms. Montero stating that she represented Ms. Jamison, attaching a "Notice of Attorney's Lien," and asking Ms. Montero to forward the letter and the lien notice to Ms. Montero's insurance carrier. At the bottom of the notice was a "Certificate of Service by Mail" that, despite its title, stated that Ms. Genson served the letter and notice on Ms. Montero by email. In fact, as Ms. Genson acknowledged in her brief in this court, there was no email service. Rather, service appears to have been unsuccessfully attempted by certified mail. The envelope, which is included in the record, was clearly returned as "Unclaimed."

¶ 6    By the end of October, Ms. Jamison had discharged the Genson Firm, and on or about December 10, 2018, she hired a new firm to represent her. Upon learning of this, the Genson Firm mailed its initial lien notice to Ms. Jamison and her new firm, asserting that it was owed $4,416.67 for the work it had performed on Ms. Jamison's file. On January 8, 2019, Ms. Genson received an

email from Ms. Jamison's second firm acknowledging receipt of the lien notice, informing the Genson Firm that Ms. Jamison's file was now being handled by a third firm, and stating that this latest firm had also been made aware of the lien.

¶ 7     Thereafter, Ms. Jamison and Ms. Montero agreed to arbitrate. Prior to the arbitration, they entered into a "high-low" agreement, pursuant to which Ms. Jamison was guaranteed to receive a minimum of $10,000. The arbitrators ultimately found in favor of Ms. Montero, and Ms. Jamison received the agreed-upon $10,000.

¶ 8     Ms. Jamison then filed a motion to adjudicate the Genson Firm's lien to $0. In her motion, Ms. Jamison argued that (1) the lien was not valid because notice of it had not been properly served on Ms. Montero, (2) even if the lien was valid, the firm's work was minimal and did not benefit Ms. Jamison or her case in any way, and (3) after payments to healthcare providers and Medicare, there was no money left to award for attorney fees.

¶ 9     In its response to Ms. Jamison's motion, the Genson Firm maintained that the work it had performed constituted necessary prelitigation investigative work. The firm argued that the lien was valid and should be paid in full because, under their attorney-client agreement, Ms. Jamison had agreed to pay the Genson Firm $450 per hour for all work performed on the case if the firm was discharged before a recovery was obtained.

¶ 10     Regarding service, the Genson Firm stated in its brief that in addition to its unsuccessful attempt to serve notice of its lien on Ms. Montero by certified mail, it had also sent notice to her by regular mail. The firm insisted that Ms. Montero must have received the mailed notice and sent it on to her insurance carrier as requested because, on October 11, 2018, Ms. Genson received a telephone call from Ms. Montero's carrier and "discussed the claim with the adjuster." In her attached affidavit, Ms. Genson did not aver to either of these additional facts. She did, however,

swear to the accuracy of a billing summary containing the following entries:

> "10/11/2018 SAG *** T/c with Adjuster. Kristi states driver had no liability because PJ ran her bike into the side of the car.

> * * *

> 10/12/2018 SAG *** Correspondence via fax to [insurer] regarding policy limits.

> * * *

> 10/18/2018 SAG *** T/c with Insurance Company and informed that policy is $50,000. Informed PJ of this information."

¶ 11    Explaining that it had "carefully reviewed all submitted materials," including "the full briefing and cited case law," the circuit court adjudicated the Genson Firm's lien to $0. The court held no hearing and provided no explanation for its ruling except to state in its order: "Attorney Sheila Genson is entitled to $0.00."

¶ 12    The Genson Firm filed a motion to reconsider the circuit court's decision, noting that the court had provided "absolutely no explanation as to why the entire amount was denied." In her response to that motion, Ms. Jamison again argued that the Genson Firm had failed to perfect its lien, in strict compliance with the Attorneys Lien Act, by serving notice of the lien on Ms. Montero by registered or certified mail. Noting that it had reviewed the record again and that Ms. Genson had presented no new arguments or law, the court concluded that its order adjudicating her lien to $0 was "correct as a matter of law" and denied the motion to reconsider.

¶ 13    This appeal followed.

¶ 14                              II. JURISDICTION

¶ 15    The circuit court entered its order adjudicating the Genson Firm's attorney lien to $0 on September 9, 2020, and its order denying the firm's timely motion for reconsideration of that ruling

on November 10, 2020. The Genson Firm filed its notice of appeal from both orders on December 7, 2020. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 16                                    III. ANALYSIS

¶ 17    As noted above, Ms. Jamison made several arguments in her motion for why the Genson Firm's lien should be adjudicated to $0. Because we find it dispositive of this appeal, we begin with the argument that notice of the lien was not properly served on Ms. Montero.

¶ 18    As an initial matter, we must reject the Genson Firm's assertion, made in its reply brief, that the circuit court in this case did in fact conclude that notice of the firm's lien was properly served. The firm's argument is that by granting Ms. Jamison's motion to adjudicate the lien and then establishing the value of the lien as $0, the court implicitly recognized the lien as valid.

¶ 19    In our view, this argument misreads the circuit court's order. The granting of a motion to adjudicate a lien implies nothing more than that the court will adjudicate the rights of the parties with respect to the purported lien. It is not an acknowledgment of the lien's underlying validity. See *In re Estate of McFadden*, 2011 IL App (2d) 101157, ¶ 14 (ultimately finding an attorney lien to be valid but failing to note anything improper, as a general matter, with a circuit court's order finding that an "attorneys' lien claim was invalid, adjudicat[ing] [the] respondent attorney's lien to zero, and extinguish[ing] the respondent's claim for attorney fees"). Here, the circuit court concluded that the Genson Firm was entitled to no payment in this matter. It provided no specific basis for that ruling. Because we may affirm on any ground supported by the record (*Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007)), if the court's decision is supported by *any* of the arguments made by Ms. Jamison in her motion—including her argument

that service was improper and the lien was never perfected in accordance with the Attorneys Lien Act—the judgment will be upheld.

¶ 20    We next address the parties' disagreement over the appropriate standard of review for this issue. Ms. Jamison urges us to review the court's decision for an abuse of discretion, while the Genson Firm argues that a ruling on the legal effect of a lien is a question of law to be reviewed *de novo*. However, the nature of our inquiry dictates the applicable standard. To the extent that we must construe the Attorneys Lien Act, our review is *de novo*. *In re Estate of McFadden*, 2011 IL App (2d) 101157, ¶ 15. Our primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. *Solon v. Midwest Medical Records Association, Inc.*, 236 Ill. 2d 433, 440 (2010). When the statutory language is clear and unambiguous, it must be applied as written. *Id.*

¶ 21    To the extent, however that the circuit court may have determined that the record facts failed to demonstrate that service was made in accordance with the Act, we must affirm the court's judgment unless it is against the manifest weight of the evidence. *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542 (1998). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001).

¶ 22    The Attorneys Lien Act establishes what is required for a law firm to assert a valid lien against a former client's recovery. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001). "The attorney must have been hired by a client to assert a claim." *Id.* While still retained, the attorney must then "perfect the lien by serving notice, in writing, upon the party against whom the client

has the claim." *Id.* Regarding the method of service, the Act states:

"To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demand or causes of action." 770 ILCS 5/1 (West 2018).

¶ 23    The record in this case indicates that the Genson Firm attempted to send notice of its lien in writing to Ms. Montero via certified mail on October 2, 2018, while the firm was still employed by Ms. Jamison. Both parties agree that Ms. Montero did not receive notice in this manner, however, as the certified letter was returned unclaimed. Ms. Jamison insists that this is the end of any inquiry, as strict compliance with the Attorneys Lien Act requires service by registered or certified mail and in no other manner.

¶ 24    The Genson Firm argues that proof Ms. Montero received actual notice of the lien—by any method of service—is sufficient to comply with the Act. The Genson Firm maintains that it also sent Ms. Montero notice of its lien via regular mail, and that Ms. Montero must have received the notice in that manner because Ms. Genson subsequently heard from Ms. Montero's insurance carrier and discussed the claim against Ms. Montero's policy with an adjustor on October 11 and 18, 2018. Those communications, Ms. Genson asserts, indicate that Ms. Montero actually received the mailed notice of the Genson Firm's lien and forwarded it on to her insurance carrier.

¶ 25    There is a split in the law on whether service of a lien notice may only be made by registered or certified mail, and support can be found for both arguments. As Ms. Jamison points out, our supreme court has indeed made clear that "[s]ince the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing [a] lien and as to the right of action for its enforcement." *Philip Morris*, 198 Ill. 2d at 95. Those who do not strictly comply with the Act thus

"have no lien rights." *Id.* And this court has previously held that proper service under the Act is thus strictly limited to personal service or service by registered or certified mail. *TM Ryan Co. v. 5350 S. Shore, L.L.C.*, 361 Ill. App. 3d 352, 357 (2005) (collecting cases and noting that "[a] majority of the cases construing the Act have held a lien arises under the statute only if notice is served by personal service or certified or registered mail on the party against whom the lien is sought"). As the Genson Firm correctly notes, however, other cases construing the Act's notice requirements have found that proof of actual notice by the defendant of the attorney's lien may cure a failure to effect service by registered or certified mail. *Id.* (collecting cases and noting that "[i]n cases where courts have upheld the validity of a lien despite a lack of proper service of notice, there was proof of actual notice.").

¶ 26    The circuit court in this case, which did not explain its ruling, may have construed the statute in either of these opposing ways. We need not determine which is correct, however, because we conclude that even if the court agreed with the Genson Firm that proof of actual notice was all that was required, no such proof was offered in this case. The record simply does not indicate whether Ms. Montero actually received notice of the Genson Firm's lien during the firm's representation of Ms. Jamison. The Genson Firm argues that the certificate of service incorrectly stating that notice of the lien was emailed to Ms. Montero could "be easily corrected" to state that it was sent to her by regular mail. The time for amending the certificate, however, has long passed. Moreover, even if the Genson Firm had promptly amended its certificate to indicate that service was by regular mail, this would tell us nothing about whether and when Ms. Montero *actually received* the notice.

¶ 27    As to the communication between Ms. Genson and Ms. Montero's insurer, at most, this establishes that the insurer knew that Ms. Genson was representing Ms. Jamison on a claim under

Ms. Montero's policy, not that Ms. Montero herself received actual notice of the Genson Firm's lien on that claim. Thus, even if the circuit court in this case liberally construed the Act to allow service by a method other than registered or certified mail, it would not have been against the manifest of the weight of the evidence for the circuit court to have concluded that Ms. Genson failed to demonstrate that notice of the Genson Firm's lien was actually received by Ms. Montero. Under any reasonable reading of the statutory language, then, there was a proper basis for the circuit court to grant Ms. Jamison's motion to adjudicate the unperfected lien to zero dollars.

¶ 28    "Error is never presumed by a reviewing court" but must instead "be affirmatively shown by the record." *In re Linda B.*, 2017 IL 119392, ¶ 43. It is furthermore "well established that, on appeal, the party claiming error has the burden of showing any irregularities that would justify reversal." *Id.* Here, although the record does not provide the circuit court's rationale for adjudicating the Genson Firm's lien to $0, the firm has failed to convince us that it was erroneous for the court to do so. The record clearly supports a finding that the lien was not properly served. We affirm on this basis and need not consider the other arguments made by Ms. Jamison in support of the court's ruling.

¶ 29                                  IV. CONCLUSION

¶ 30    For the above reasons, we affirm the circuit court's order adjudicating the Genson Firm's attorney lien to $0.

¶ 31    Affirmed.