NOTICE
Decision filed 01/16/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 130527

NO. 5-13-0527

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ROBIN D. HASTINGS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-MR-303 |
| | ) | |
| THE STATE OF ILLINOIS, DU QUOIN STATE | ) | |
| FAIR, and THE DEPARTMENT OF | ) | |
| AGRICULTURE, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Moore[1] concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Robin D. Hastings, filed a complaint in the Illinois Court of Claims against the State of Illinois, specifically the Illinois Department of Agriculture (the Department). Hastings alleged that she suffered personal injuries while attending events

_____

[1]Justice Spomer was originally assigned to this case. Justice Moore was substituted on the panel following Justice Spomer's retirement and has read the briefs and listened to the tape of oral argument.

1

at the Du Quoin State Fairgrounds on August 21, 2008. She alleged that she slipped and fell on an "extremely slick concrete floor" while entering one of the women's bathhouses located on the fairgrounds. She alleged that she suffered, among other injuries, a fracture to her right kneecap as a result of the fall. The Court of Claims entered a summary judgment in favor of the Department. The plaintiff sought a review of the Court of Claims' decision, but the circuit court dismissed her petition for writ of *certiorari*. The plaintiff now appeals the circuit court's judgment. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3      On August 21, 2008, the plaintiff attended the Du Quoin State Fair at the Du Quoin fairgrounds, which is owned and operated by the Department. It had rained earlier that day, and the plaintiff wore flip-flops. The plaintiff walked through wet grass and on a wet sidewalk toward a bathhouse on the fairgrounds. At the bathhouse, she stepped into its entrance alcove and slipped as she reached to open the door.

¶ 4      The sidewalk surface area where the plaintiff slipped and fell was more slippery than the sidewalk leading up to the bathhouse's alcove. The building and grounds maintenance supervisor for the fairgrounds testified in a discovery deposition that the sidewalk leading up to the bathhouse was "more of a coarse broom" finish, while the entryway was more of a "light broom" finish.

¶ 5      An engineer expert retained by the plaintiff inspected the bathhouse and opined that the sidewalk leading to the entrance of the bathhouse was a "broom finish," while the concrete entryway of the bathhouse was a "trowel finish," and that the entryway was significantly more slippery than the sidewalk. The engineer believed that the difference

2

in the coefficient of friction between the two walking surfaces created a dangerous condition that caused the plaintiff's fall. Specifically, the engineer concluded that "the variation in the COF [coefficient of friction] between the broom finish sidewalk and the trowel finish alcove located at the entry way to the Women's Bathhouse Facility was the direct cause that led to the slip and fall that [the plaintiff] experienced." In his report, the engineer wrote: "As [the plaintiff] walked from a less slippery broom finish surface to a more slippery trowel finish surface, her forward gait was altered by the sudden change in the frictional resistance between her footwear sole and the concrete she was stepping on. This sudden change in frictional resistance created a hazardous situation and is the primary cause of the accident." He wrote that "the State of Illinois used poor judgment when electing not to voluntarily follow the COF of friction criteria established by both the ASTM and ANSI [American National Standards Institute] standards."

¶ 6    A supplemental report authored by the engineer opined that the bathhouse had been in service for over 20 years and that "foot traffic along with scheduled mopping and cleaning of the surface at the entry alcove has altered the surface texture of the concrete from when it was first installed." He believed that the wear on the surface of the concrete reduced its frictional resistance, creating a hazardous condition. The engineer also observed a crack in the vestibule concrete that had been present for many years and had been repaired with concrete filler material. He opined that the concrete surface of the alcove had not "been maintained to meet the current means of egress requirement."

¶ 7    On April 9, 2009, the plaintiff filed a complaint against the Department in the Court of Claims alleging that her fall resulted from the Department's failure to inspect,

3

maintain, repair, and clean the walking surfaces, providing a walking surface that was too slick for entryway use, and failure to warn of the slick and dangerous condition.

¶ 8 During the proceedings in the Court of Claims, the Department filed a motion for summary judgment. The Department argued that the plaintiff could not establish that it had actual or constructive notice of the allegedly dangerous condition posed by the concrete near the bathhouse. The Department also argued that the plaintiff's cause of action was barred by Illinois's 10-year statute of repose for construction-related claims because the entryway and the surrounding sidewalk had been built more than 10 years earlier.

¶ 9 In response, the plaintiff argued that a summary judgment was not appropriate because there were genuine issues of material fact concerning the Department's actual or constructive knowledge of the dangerous condition of the bathhouse entryway. In addition, she argued that the statute of repose for construction-related claims was not applicable because her claim was based on a negligent maintenance theory.

¶ 10 On April 10, 2012, the Court of Claims granted the Department's motion for summary judgment. The court did not specify the grounds on which it granted the motion. Subsequently, the court denied the plaintiff's request for a rehearing. The plaintiff then filed a petition for *certiorari* with the circuit court of St. Clair County. The plaintiff alleged that the Court of Claims acted arbitrarily in granting the summary judgment; therefore, she was denied her right to substantive and procedural due process.

¶ 11 The Department filed a motion to transfer the venue of the proceeding to the circuit court of Sangamon County pursuant to section 2-101 of the Code of Civil

4

Procedure (735 ILCS 5/2-101 (West 2012)). On November 20, 2012, the circuit court entered an order transferring the case to Sangamon County. The plaintiff filed a motion to reconsider, and a different judge entered an order granting the motion to reconsider, finding that St. Clair County was a proper venue for the plaintiff's petition for *certiorari*.

¶ 12   On October 2, 2013, the circuit court entered an order dismissing the plaintiff's petition for *certiorari* due to a lack of subject matter jurisdiction. The circuit court cited *Reichert v. Court of Claims*, 203 Ill. 2d 257, 786 N.E.2d 174 (2003), and held that a *certiorari* action may be used by a litigant to address alleged deprivations of due process by the Court of Claims, but *certiorari* may not be used to review the correctness of a decision by the Court of Claims based upon the merits of the case before it.

¶ 13   The circuit court believed that the Court of Claims should not have granted the summary judgment based on the record before it. However, it concluded that the plaintiff had a meaningful opportunity to be heard and was, therefore, afforded procedural due process rights. The plaintiff now appeals the circuit court's judgment.

¶ 14                     DISCUSSION

¶ 15   The plaintiff argues that the circuit court improperly denied her petition for writ of *certiorari* because she was denied her constitutional right to due process by the Court of Claims. We disagree.

¶ 16   The Court of Claims is the exclusive forum for litigants to make claims against the State, including claims for damages sounding in tort. 705 ILCS 505/8(d) (West 2012). The Court of Claims was established by the Court of Claims Act (the Act) (705 ILCS 505/1 *et seq.* (West 2012)). The Act does not provide for the review of decisions of the

5

Court of Claims. *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 505, 676 N.E.2d 679, 683 (1997). Accordingly, decisions of the Court of Claims are generally not subject to judicial review. *Id*. at 502, 676 N.E.2d at 682. However, the Illinois Supreme Court has allowed a narrow exception to this rule and has held that *certiorari* is available for cases in which the Court of Claims has deprived a party of his or her constitutional right to due process. *Reichert*, 203 Ill. 2d at 261, 786 N.E.2d at 177.

¶ 17 In *Reichert*, the court stated that "[t]he common law writ of *certiorari* provides a means whereby a party who has no avenue of appeal or direct review may obtain limited review over action by a court or other tribunal exercising quasi-judicial functions." *Id.* at 260, 786 N.E.2d at 177. The *Reichert* court noted that *certiorari* was available to address alleged deprivations of due process by the Court of Claims, but "may not be used to review the correctness of a decision by the Court of Claims based upon the merits of the case before it." *Id*. at 261, 786 N.E.2d at 177. The *Reichert* court further explained that the "[r]equirements of due process are met by conducting an orderly proceeding in which a party receives adequate notice and an opportunity to be heard." *Id*. "Due process is not abridged where a tribunal misconstrues the law or otherwise commits an error for which its judgment should be reversed." *Id*.

¶ 18 In the present case, the circuit court properly denied the plaintiff's petition for writ of *certiorari* because the record establishes that she was afforded adequate notice and an opportunity to be heard. The record includes pleadings that both parties filed with the Court of Claims with respect to the applicable statute of limitations and the Department's actual or constructive notice of the alleged defective condition of the bathhouse's alcove

6

walking surface. The plaintiff made extensive legal arguments supported by case law, deposition testimony, an engineering expert's report, and other exhibits. The circuit court was able to determine from the record of the Court of Claims proceeding that the plaintiff was afforded a meaningful opportunity to be heard; therefore, she could not prevail in the *certiorari* proceeding.

¶ 19 The substantive questions decided by the Court of Claims concerning whether the Department was entitled to a summary judgment based on the applicable statute of limitations or due to lack of actual or constructive notice are questions that are not reviewable. As noted by the Illinois Supreme Court in *Reichert*, misconstruction of the law does not amount to a due process violation. *Id.*; *Reyes v. Court of Claims*, 299 Ill. App. 3d 1097, 1105, 702 N.E.2d 224, 230 (1998) (finding plaintiff's due process rights would not be violated even if it found the Court of Claims ruled incorrectly regarding the statute of limitations).

¶ 20 In *Reyes*, the plaintiff brought a medical malpractice claim against the Board of Trustees of the University of Illinois Hospital in the Court of Claims, and the Court of Claims dismissed the claim as being untimely under the applicable statute of limitations. The circuit court reversed the Court of Claims, finding that the plaintiff timely filed the claim. On appeal, the *Reyes* court reversed the circuit court, holding that the circuit court lacked jurisdiction to reverse the Court of Claims based on the merits of its decision because the plaintiff's due process rights were not violated. *Reyes*, 299 Ill. App. 3d at 1106, 702 N.E.2d at 231.

¶ 21    The court noted that the "requirement of due process is met by having an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights." *Id.* at 1104, 702 N.E.2d at 230. The court emphasized that due process does not guarantee against erroneous or unjust decisions, and an error in a judgment or a misconstruction of the law does not raise a constitutional question. *Id*. at 1105, 702 N.E.2d at 230.

¶ 22    Similar to the plaintiff in *Reyes*, the plaintiff in the present case was not denied an opportunity to argue that she filed her claim within the applicable statute of limitations or that the Department had adequate notice of the alleged defective condition of the bathhouse alcove. In the Court of Claims proceeding, the parties conducted discovery with respect to the plaintiff's claim and the Department's affirmative defenses. The plaintiff's discovery included interrogatories and a request to produce documents that the plaintiff served on the Department, the deposition of the buildings and grounds maintenance supervisor at the fairgrounds, and two reports from an engineering expert who inspected the bathhouse's alcove and the sidewalk leading up to the bathhouse. When the Department filed a motion for summary judgment, the Court of Claims afforded the plaintiff the opportunity to submit affidavits, deposition testimony, expert reports, and other evidence in response to the Department's motion. The plaintiff also responded to the Department's motion with a memorandum of law that included citations to relevant case law and statutes as well as legal arguments and analysis. The Court of Claims considered the plaintiff's response, but granted the Department's motion for a summary judgment. After the Court of Claims granted the summary judgment, it

8

considered the plaintiff's petition for rehearing, but denied it as well. The Court of Claims, therefore, allowed the plaintiff an opportunity to be heard with respect to the Department's motion and again with respect to her request for a rehearing. Because the plaintiff was afforded due process in the Court of Claims proceeding, the circuit court properly denied the plaintiff's petition for writ of *certiorari*.

¶ 23    On appeal, the plaintiff argues that a petition for writ of *certiorari* should include a review of the record of the Court of Claims proceeding to determine whether its ruling was arbitrary, capricious, or wholly unsupported by the facts and law. The plaintiff's argument, however, is based on the merits of her position with respect to the Department's actual or constructive notice as well as the timeliness of her claim under the applicable statute of limitations. In her brief, after rearguing the substantive issues that were before the Court of Claims, the plaintiff concludes that she was denied substantive due process because the Court of Claims granted the Department a summary judgment. She asks us to review the merits of the Court of Claims' summary judgment under an arbitrary and capricious standard.

¶ 24    We note that in *Reichert*, the supreme court stated that *certiorari* review of Court of Claims decisions was limited to determining whether the aggrieved "party receive[d] adequate notice and an opportunity to be heard." *Reichert*, 203 Ill. 2d at 261, 786 N.E.2d at 177 (citing *Reyes*, 299 Ill. App. 3d at 1104, 702 N.E.2d at 230). Although the supreme court's cite to *Reyes* and its discussion concerning the scope of *certiorari* review is *obiter dictum* since the court ruled that the plaintiff's petition for *certiorari* was premature, nonetheless, such a statement by the supreme court can be tantamount to a decision and

9

binding in the absence of a contrary decision of that court. *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715, 717 (1993).

¶ 25    The plaintiff has not cited and we have not found any supreme court authority that is contrary to *Reichert* concerning the proper scope of review for *certiorari* actions seeking review of a decision of the Court of Claims. Furthermore, we have previously considered *Reichert* and concluded that the "scope of review for a petition for *certiorari* relief from a decision of the Court of Claims is quite narrow." *Lake v. State*, 401 Ill. App. 3d 350, 353, 928 N.E.2d 1251, 1255 (2010). Under current supreme court precedent, we believe that the scope of our review is limited to determining whether the plaintiff was afforded adequate notice and opportunity to be heard before the Court of Claims; we cannot determine whether the Court of Claims misconstrued the law or otherwise committed an error for which its judgment should be reversed. *Reichert*, 203 Ill. 2d at 261, 786 N.E.2d at 177; see also *Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72, 79-80, 485 N.E.2d 332, 335 (1985) ("In deciding that *certiorari* was appropriate under the rare set of circumstances in the instance case, we do not now hold that *certiorari* would be available to review the correctness of any decision of the Court of Claims based on the merits of an appeal.").

¶ 26    In a *certiorari* action seeking a review of a Court of Claims decision, the function of the circuit court is to examine the record from the Court of Claims proceeding and determine whether the proceeding satisfied the petitioner's procedural due process rights. If the circuit court determines that "the party is provided with notice and the opportunity to be heard at a meaningful time and in a meaningful manner," the circuit court is to

dismiss the *certiorari* petition and quash the writ. *Lake*, 401 Ill. App. 3d at 353-54, 928 N.E.2d at 1255-56. In the present case, the circuit court examined the record of the proceedings before the Court of Claims and correctly determined that the Court of Claims afforded the plaintiff her due process rights. Therefore, the circuit court properly dismissed the *certiorari* petition, and we must affirm the judgment of the circuit court.

¶ 27 Finally, we note that the Department moved to change the venue of the *certiorari* proceeding, arguing that Sangamon County was the proper venue, not St. Clair County. However, the issue concerning the proper venue is not before us on appeal and, as the Department concedes in its brief, the circuit court's judgment is valid regardless of whether St. Clair County was the proper venue. 735 ILCS 5/2-104(a) (West 2012) ("No order or judgment is void because rendered in the wrong venue ***."). Accordingly, we need not determine whether St. Clair County or Sangamon County was the proper venue for the plaintiff's *certiorari* review.

¶ 28                                          CONCLUSION

¶ 29 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 30 Affirmed.

2015 IL App (5th) 130527

NO. 5-13-0527

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

ROBIN D. HASTINGS,                              )       Appeal from the
                                                )       Circuit Court of
        Plaintiff-Appellant,                    )       St. Clair County.
                                                )
v.                                              )       No. 12-MR-303
                                                )
THE STATE OF ILLINOIS, DU QUOIN STATE           )
FAIR, and THE DEPARTMENT OF                     )
AGRICULTURE,                                    )       Honorable
                                                )       Stephen P. McGlynn,
        Defendants-Appellees.                   )       Judge, presiding.

_____

**Opinion Filed:**          January 16, 2015

_____

**Justices:**       Honorable Bruce D. Stewart, J.

                    Honorable Judy L. Cates, P.J., and
                    Honorable James R. Moore, J.,
                    Concur

_____

**Attorney**       Edward J. Szewczyk, Callis, Papa, Hale & Szewczyk, P.C., 1326
**for**            Niedringhaus Avenue, P.O. Box 1326, Granite City, IL 62040
**Appellant**

_____

**Attorneys**      Lisa Madigan, Attorney General, Carolyn E. Shapiro, Solicitor
**for**            General, Laura Wunder, Assistant Attorney General, 100 West
**Appellees**      Randolph Street, 12th Floor, Chicago, IL 60601

_____