2020 IL App (1st) 190853-U

No. 1-19-0853

Order filed April 23, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PIETRO BORTONE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CH 9381 |
| | ) | |
| THE COURT OF CLAIMS and THE BOARD OF | ) | |
| TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendants-Appellees. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's dismissal of plaintiff's petition for writ of *certiorari* that sought to reverse a decision of the Court of Claims where plaintiff failed to sufficiently allege a deprivation of his right to due process.

¶ 2    Plaintiff Pietro Bortone applied for tenure at the University of Illinois Chicago (UIC), but the Board of Trustees of the University of Illinois (Board) denied his application. As a result, Bortone filed an action in the Court of Claims against the Board as well as in the circuit court

against three UIC professors, alleging tortious interference with contract, tortious interference with prospective economic advantage and civil conspiracy. Bortone's Court of Claims case was stayed while the circuit court case proceeded, culminating in a jury trial. The jury found one of UIC's professors liable for tortious interference with contract and awarded Bortone $5000 in damages. Thereafter, Bortone's Court of Claims case returned to active status, and he filed an amended complaint, primarily alleging breach of contract by the Board. On the Board's motion, the Court of Claims dismissed Bortone's amended complaint based on the doctrine of *res judicata*. Bortone subsequently filed a petition for writ of *certiorari* in the circuit court seeking to reverse the Court of Claims' decision. On motions to dismiss by the Court of Claims and the Board, the circuit court dismissed Bortone's petition.

¶ 3      Bortone now appeals that dismissal, contending that the circuit court erred in dismissing his petition where it took an overly narrow approach when reviewing the Court of Claims' decision and where the Court of Claims violated its own enacting statute, exceeded its jurisdiction and deprived him of an opportunity to be heard. For the reasons that follow, we affirm.

¶ 4                                I. BACKGROUND

¶ 5      In 2003, the Board hired Bortone to a junior, tenure-track position as an assistant professor in Modern Greek Studies in the Department of Classics and Mediterranean Studies (Department) at UIC. As part of his contract, Bortone was eligible to apply for tenure no later than his sixth year at UIC. In 2008, Bortone applied for tenure. UIC assessed candidates for tenure based upon three criteria: scholarly research, teaching and service.

¶ 6      Bortone's tenure review process had many layers beginning with a vote among the tenured members of the Department. Two members of his Department voted in favor of granting him tenure while two members, Professors Nanno Marinatos and John Vaio, voted against granting

him tenure. The chair of the Department, Professor John Ramsey, broke the tie vote and recommended granting him tenure. Next, the nine-member College of Liberal Arts (LAS) promotion and tenure committee voted unanimously to deny Bortone tenure. The dean of LAS subsequently recommended against granting him tenure. Next, the campus promotion and tenure committee voted 19 in favor of granting Bortone tenure and 5 against granting him tenure. Following those votes, the dean of the Graduate College and the campus provost issued a joint recommendation against granting Bortone tenure. Ultimately, the chancellor of the campus recommended against granting him tenure, provided that recommendation to the Board and the Board denied him tenure. The stated reason for the denial was Bortone's failure to fulfill the scholarly research criterion. As a result, Bortone's employment with UIC ended in spring 2010.

¶ 7 In September 2011, Bortone filed a complaint in the Court of Claims against the Board, alleging various claims, including breach of contract.

¶ 8                          A. Initial Circuit Court Proceedings

¶ 9 In November 2011, Bortone filed a complaint in the circuit court against Professors Marinatos, Vaio and Ramsey. The operative second amended complaint alleged counts of tortious interference with contract, tortious interference with prospective economic advantage and civil conspiracy. The second amended complaint asserted that Bortone's position at UIC had been funded by money from wealthy donors in Chicago's Greek community. The gist of the allegations in the second amended complaint was that Marinatos, Vaio and Ramsey conspired together to smear Bortone's reputation and induce the donors to believe that Bortone was not fulfilling their wishes, in an attempt to divert their money toward Marinatos, Vaio and Ramsey's own course offerings that were in jeopardy of being discontinued by UIC. As part of the professors' alleged smear campaign

against Bortone, the second amended complaint alleged that Marinatos, Vaio and Ramsey violated UIC rules, made false statements to UIC committees and forged official documents. The efforts of Marinatos, Vaio and Ramsey, according to the second amended complaint, resulted in the Board denying Bortone tenure, which irreparably injured his academic reputation. In each of the three counts of the lawsuit, Bortone sought $1 million in compensatory damages and $3 million in punitive damages.

¶ 10    As a result of Bortone's circuit court case, the Court of Claims stayed its proceedings. Over the next several years, Bortone's case proceeded through the circuit court, culminating with a 2017 jury trial. Before the jury deliberated, Bortone withdrew his civil conspiracy count against Ramsey, Marinatos and Vaio. The jury ultimately found Ramsey liable for tortious interference with contract, but not liable for tortious interference with prospective economic advantage. The jury also found Marinatos and Vaio not liable on the counts against them. The jury awarded Bortone $5000 for Ramsey's tort, and the circuit court entered judgment on the jury's verdict. Bortone did not appeal that case.

¶ 11                    B. Court of Claims Proceedings

¶ 12    After Bortone's circuit court case concluded, he requested that the Court of Claims return his case to its active calendar, which it did. In August 2017, Bortone filed a three-count amended complaint in the Court of Claims against the Board for breach of contract, or in the alternative, misrepresentation and fraudulent misrepresentation. In the amended complaint, Bortone asserted that he had exhausted his administrative and judicial remedies, as required by section 25 of the Court of Claims Act (705 ILCS 505/25 (West 2016)), before filing his amended complaint in the Court of Claims. He posited that his recovery in the circuit court should act as a "credit and partial set-off to any recovery" in the Court of Claims.

¶ 13    The gist of Bortone's amended complaint was that the Board breached its employment contract with him by denying him tenure despite him satisfying the criteria when it allowed "the corrupting interference of external individuals who were giving money to UIC." Alternatively, the amended complaint alleged that the Board misrepresented the criteria for tenure by "repeatedly denying and intentionally concealing that an essential (but impermissible) requirement for the grant of tenure and promotion was to satisfy the demands of Donors." Further in the alternative, the amended complaint alleged that the Board committed fraudulent misrepresentation when it hired Bortone by failing to advise him that the grant of tenure was based on the approval of people outside of UIC who lacked academic credentials. The amended complaint sought approximately $1.6 million in damages, the amount he allegedly would have received if granted tenure plus the value of his benefits.

¶ 14    In response to Bortone's amended complaint, the Board filed a motion to dismiss arguing that the doctrine of *res judicata* barred him from raising the claims against it because there was an identity of claims, identity of parties and a final judgment on the merits from the circuit court case. As to the identity of claims, the Board asserted that Bortone's cases in the circuit court and Court of Claims contained essentially identical claims and factual allegations, as both causes of action arose out of the circumstances surrounding the Board denying Bortone tenure. As to the identity of the parties, the Board noted that, in the circuit court case, Bortone was the plaintiff, and in the Court of Claims case, Bortone was the claimant. The Board acknowledged that there was no strict identity of parties among the defendants, but asserted that Marinatos, Vaio and Ramsey and the Board were in privity with one another because their interests were aligned at all times, and the defense was coordinated since Bortone litigated the case and sought discovery as if he were suing the Board itself. Moreover, the Board noted that it assumed responsibility for the costs and fees to

defend Marinatos, Vaio and Ramsey as well as the judgment rendered in their case as it was required to do under the State Employee Indemnification Act (5 ILCS 350/0.01 *et seq.* (West 2016)). Lastly, as to a final judgment on the merits, the Board argued that the jury's verdict in the circuit court case constituted such a judgment. Along with its motion to the dismiss, the Board included a certificate of service indicating that it served Bortone's attorneys with the motion.

¶ 15    Bortone responded to the Board's motion, arguing that his action in the Court of Claims was proper because, under the Court of Claims Act (705 ILCS 505/25 (West 2016)), he was required to exhaust all other remedies in the circuit court based on "claims from the 'same transaction' " before proceeding with litigation in the Court of Claims. To this end, Bortone asserted that he sued Marinatos, Vaio and Ramsey in the circuit court, obtained a judgment against Ramsey and could proceed against the Board, a state entity, in the Court of Claims. Regarding the doctrine of *res judicata*, Bortone highlighted that the Board failed to cite a single decision from the Court of Claims applying the doctrine and noted that the doctrine itself was an equitable one. Bortone accordingly argued that it would be inequitable to apply the doctrine of *res judicata* in his case where he was statutorily required to sue the individual tortfeasors in the circuit court and "the inability to join the [Board] in any such lawsuit."

¶ 16    In June 2018, after the Board filed a reply, the Court of Claims entered a written decision on the matter. The Court of Claims noted the three elements of the doctrine of *res judicata* and highlighted that the element in contention between the parties was whether there was an identity of claims. The Court of Claims asserted that, in analyzing this element, Illinois courts use the " 'transaction test' under which 'separate claims will be considered the same cause of action *** if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.' " In finding that Bortone's circuit court case and Court of Claims case arose from a

single group of operative facts, the Court of Claims found that both cases involved the same actors and their same alleged improper conduct. Because there was an identity of claims and the other two elements of the doctrine of *res judicata* had been met, the Court of Claims found that the doctrine had been established. The Court of Claims concluded that Bortone "should not be given a second bite at the apple merely because he can find another legal theory in another legal forum to sue on the same injury," and it dismissed his amended complaint.

¶ 17                    C. Subsequent Circuit Court Proceedings

¶ 18    In July 2018, Bortone filed a petition for writ of *certiorari* in the circuit court that named the Court of Claims and the Board as defendants, seeking to overturn the Court of Claims' dismissal of his amended complaint based on three alleged deprivations of his right to due process. First, Bortone argued that the Court of Claims' dismissal constituted a complete abrogation of its enacting statute, which required him to exhaust all of his other remedies. Second, Bortone argued that the Court of Claims' dismissal nullified the jury's implicit finding that Ramsey was not acting within the scope of his employment when it found him liable for intentionally interfering with Bortone's contract. Third, Bortone argued that the Court of Claims did not allow him to have an evidentiary hearing or "even to be heard" on the Board's motion to dismiss, and the Court of Claims' dismissal order never mentioned his response or any of his arguments.

¶ 19    In response, the Board and the Court of Claims filed motions to dismiss. The Board filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), arguing that Bortone failed to state a claim for *certiorari* because his right to due process was not violated and it was not a proper party in the circuit court litigation. The Board did not state under which section of the Code its latter argument was made. The Court of Claims also filed a combined motion to dismiss under section 2-619.1 of the Code (*id.*). Under

section 2-615 (*id.* § 2-615), the Court of Claims argued that Bortone failed to state a claim for *certiorari* because it had not violated his right to due process. And under section 2-619(a)(1) (*id.* § 2-619(a)(1)), the Court of Claims argued that the circuit court lacked jurisdiction to entertain Bortone's *certiorari* claim insofar as he challenged the merits of the Court of Claims' decision.

¶ 20    Bortone responded, arguing that his writ of *certiorari* was appropriate and repeated the arguments he made in his petition. Bortone also stated that he had no objection to dismissing the Board from the action as an improper party.

¶ 21    In March 2019, the circuit court entered a written order and observed that decisions by the Court of Claims were generally unreviewable on their merits and only subject to attack where the plaintiff claimed that he was denied due process. The court found that Bortone had raised no persuasive argument that he was denied due process by the Court of Claims, and the record, in fact, showed that Bortone had a full and complete opportunity to argue before the Court of Claims. The circuit court found that all of his arguments were "creative attempts" to have it review the merits of the Court of Claims' decision under the guise of due process violations. The circuit court accordingly granted the Board and the Court of Claims' motions to dismiss with prejudice.

¶ 22    Bortone subsequently appealed.

¶ 23                                    II. ANALYSIS

¶ 24    Bortone contends that the circuit court took an overly narrow approach when reviewing his petition for writ of *certiorari* and that it erred in dismissing his petition where the Court of Claims violated its own enacting statute, exceeded its jurisdiction and deprived him of an opportunity to be heard.

¶ 25    Before considering the merits of Bortone's contentions, we must address the Board's request to strike or disregard his statement of facts for alleged violations of our supreme court

rules. First, the Board argues that Bortone violated Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) by citing to his own amended complaint in the Court of Claims for factual support despite such allegations, the Board claims, being contradicted by trial testimony and depositions in the initial circuit court case. Additionally, the Board argues that, because Bortone relies on "unsubstantiated 'facts,' " he also violated Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). Though Bortone may have violated our supreme court rules, particularly in his recitation of the statement of facts, because his violations have not hindered our review of his appeal, we will not strike his statement of facts. See *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8. We will, however, disregard the portions of Bortone's statement of facts that do not comply with Rule 341(h)(6). See *id.* (disregarding "the noncompliant portions of plaintiff's statement of facts"). We now turn to the propriety of the circuit court's dismissal of Bortone's petition for writ of *certiorari*.

¶ 26                           A. Motions to Dismiss

¶ 27    When the circuit court dismissed Bortone's writ for *certiorari* based on both the Board and the Court of Claims' combined motions to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2016)), the circuit court essentially did so on two bases, one that Bortone had failed to sufficiently allege a deprivation of his right to due process and second that it lacked the jurisdiction to review the merits of the Court of Claims' decision. In other words, the court found that Bortone failed to state a claim upon which relief could be granted and that it lacked subject-matter jurisdiction over the matter.

¶ 28    Under section 2-619.1 of the Code (*id.*), a party may combine a section 2-615 motion to dismiss (*id.* § 2-615) with a section 2-619 motion to dismiss (*id.* § 2-619). *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 15. A motion to dismiss brought under section 2-615 challenges the legal

sufficiency of a complaint by alleging defects apparent on its face. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. A dismissal is proper under section 2-615 only when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* In contrast, a motion to dismiss brought under section 2-619 admits the legal sufficiency of the complaint but asserts that certain external defects or defenses defeat the claims therein. *Sandholm v. Kuecker*, 2012 IL 111443. One such defect is where "the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2016). When reviewing either type of motion to dismiss, the circuit court must accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *In re Estate of Powell*, 2014 IL 115997, ¶ 12; *Sandholm*, 2012 IL 111443, ¶ 55. As well, the pleadings must be viewed in the light most favorable to the nonmoving party. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 23-24 (2004). We review a dismissal pursuant to either section *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 29                                  B. Court of Claims

¶ 30    The 1870 Illinois Constitution provided the State of Illinois with immunity from lawsuits of any kind. Ill. Const. 1870, art. IV, § 26 ("The state of Illinois shall never be made defendant in any court of law or equity.") However, in the 1970 Illinois Constitution, the doctrine of sovereign immunity was abolished "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. With this constitutional authority, the legislature passed the State Lawsuit Immunity Act (Pub. Act 77-1776 (eff. Jan. 1, 1972)), "reinstituting the doctrine of sovereign immunity." *Parmar v. Madigan*, 2018 IL 122265, ¶ 19. This law prevents the State from being "made a defendant or party in any court" except as provided in the Court of Claims Act (Act) (705 ILCS 505/1 *et seq.* (West 2016)) and other laws inapplicable to this appeal. 745 ILCS 5/1 (West 2016).

¶ 31 Through the Act, the legislature created the Court of Claims to have, with limited exceptions, "exclusive jurisdiction to hear and determine" all claims against the State. 705 ILCS 505/1, 8 (West 2016). Such claims include "[a]ll claims against the State founded upon any contract entered into with the State of Illinois." *Id.* § 505/8(b). The Board, as an arm of the State, is considered the State. *Raymond v. Goetz*, 262 Ill. App. 3d 597, 605 (1994). While the Court of Claims is the primary forum for actions against the State, because it was legislatively created, it "is not a court within the meaning of the judicial article of our state constitution" but rather a part of the legislative branch. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 96-97 (2001). Indeed, "its function is not to adjudicate cases" but rather "to receive and resolve claims against the state." *Id.* at 97. The Court of Claims "is in essence the legislature—the body called upon to fund any awards—that is deciding through the Court of Claims the merits of the claims before it." *S.J. Groves & Sons Co. v. State of Illinois*, 93 Ill. 2d 397, 405 (1982).

¶ 32 As a creature of statute, the Act provides the procedures to obtain review of Court of Claims' decisions. See 705 ILCS 505/15 (West 2016) (explaining on what grounds the Court of Claims may grant a new trial and noting that it may provide by rule "a procedure for review of a decision"). Section 790.220 of the Court of Claims' rules provides the procedure for obtaining a rehearing or new trial in the Court of Claims (74 Ill. Adm. Code 790.220 (eff. Apr. 29, 2016)), but no section of the Act or any rule provides for review outside the Court of Claims itself. See 705 ILCS 505/1 *et seq.* (West 2016) 74 Ill. Adm. Code 790.10 *et seq.* (eff. July 1, 2000); see also *Reichert v. Court of Claims*, 203 Ill. 2d 257, 261 (2003) ("The Act provides no method of review of decisions of the Court of Claims.").

¶ 33 While the Act provides no external means of review of Court of Claims decisions, in *Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72, 79 (1985), our supreme court held that

a common law petition for writ of *certiorari* was a proper means to review a Court of Claims decision. "The common law writ of *certiorari* provides a means whereby a party who has no avenue of appeal or direct review may obtain limited review over action by a court or other tribunal exercising quasi-judicial functions." *Reichert*, 203 Ill. 2d at 260. "The purpose of *certiorari* review is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether the tribunal proceeded according to applicable law." *Id.* As a result, with respect to *certiorari* actions, the circuit court acts as the reviewing court. *Id.* at 260-61. Although in *Rossetti*, our supreme court held that a petition for writ of *certiorari* was a proper means to review a Court of Claims decision, the court limited its holding to review only whether the Court of Claims violated a party's right to due process, which it characterized as "an opportunity to be heard." *Rossetti*, 109 Ill. 2d at 78. And our supreme court emphasized that *certiorari* was not "available to review the correctness of any decision of the Court of Claims based on the merits of an appeal." *Id.* at 80.

¶ 34    The holding in *Rossetti* was re-affirmed by our supreme court in *Reichert*, where it stated: "This court has held that *certiorari* is available to address alleged deprivations of due process by the Court of Claims." *Reichert*, 203 Ill. 2d at 261 (citing *Rossetti*, 109 Ill. 2d at 79). The Court of Claims will have afforded due process to a party when it "conduct[s] an orderly proceeding in which a party receives adequate notice and an opportunity to be heard." *Id*. Moreover, "[d]ue process is not abridged where a tribunal misconstrues the law or otherwise commits an error for which its judgment should be reversed." *Id.* Consistent with *Reichert* and *Rossetti*, in cases involving appeals of circuit court dismissals of petitions for writ of *certiorari* from Court of Claims decisions, the appellate court has found the critical question to be whether the plaintiff has sufficiently alleged a deprivation of due process. See *Krozel v. Court of Claims*, 2017 IL App (1st)

162068, ¶ 18; *Reyes v. Court of Claims of the State of Illinois*, 299 Ill. App. 3d 1097, 1104-05 (1998); *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 505-06 (1997).

¶ 35    Nevertheless, Bortone argues that the circuit court improperly construed what it could review from the Court of Claims. Bortone posits that the circuit court's limited review of whether he had notice and an opportunity to be heard contravenes Illinois precedent of the permissible scope of review from petitions for writ of *certiorari* and asserts that the circuit court can consider whether the Court of Claims violated the law, acted arbitrarily and capriciously, or otherwise acted to deny a plaintiff's rights. Although Bortone cites several decisions, including many from our supreme court, to support his assertions, none of the cases involve circuit court review of petitions for writ of *certiorari* seeking to reverse decisions of the Court of Claims. See *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324 (2009) (complaint for declaratory judgment and a writ of *mandamus* to appeal a decision from the Illinois Department of Transportation denying outdoor advertising permits); *Hanrahan v. Williams*, 174 Ill. 2d 268 (1996) (petition for writ of *certiorari* to obtain review of Prisoner Review Board's decision to deny parole); *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413 (1990) (petition for writ of *certiorari* to reverse an expulsion decision by school board); *Smith v. Department of Public Aid*, 67 Ill. 2d 529 (1977) (petition for writ of *certiorari* seeking review of a decision by the Department of Public Aid to increase the price for food stamps); *Funkhouser v. Coffin*, 301 Ill. 257 (1921) (petition for writ of *certiorari* seeking review of a decision by the civil service commission of the City of Chicago to remove the petitioner as second deputy superintendent of the police department); *Lane v. Village of Heyworth*, 2019 IL App (4th) 180488 (petition for writ of *certiorari* to overturn a village's termination of the petitioner as village police chief); *Fillmore v. Taylor*, 2017 IL App (4th) 160309 (petition for writ of *certiorari* against three Department of Corrections officers to

review their disciplinary decisions) *aff'd in part and rev'd in part*, 2019 IL 122626. Because none of these cases involve the Court of Claims, which as noted is a special tribunal considered part of the legislative branch, Bortone's citation to these decisions is misplaced, and the permissible scope of review from Court of Claims decisions continues to be for due process violations. See *Reichert*, 203 Ill. 2d at 261.

¶ 36    Although Bortone acknowledges our supreme court's discussion in *Reichert* of *certiorari* being available to address alleged deprivations of due process by the Court of Claims, he argues that the discussion was purely *dicta* because the court ultimately decided the case on grounds it raised *sua sponte*. Nevertheless, such a discussion " 'of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court.' " *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 416 (2003) (quoting *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)). There is no contrary decision by our supreme court, and indeed, the appellate court has found *Reichert*'s discussion of *certiorari* being available to address alleged deprivations of due process by the Court of Claims as binding. See *Hastings v. State*, 2015 IL App (5th) 130527, ¶¶ 24-25 (acknowledging *Reichert*'s discussion of "the scope of *certiorari* review [was] *obiter dictum*" but finding the discussion binding because "[t]he plaintiff has not cited and we have not found any supreme court authority that is contrary to *Reichert* concerning the proper scope of review for *certiorari* actions seeking review of a decision of the Court of Claims"); *Reichert v. Court of Claims*, 389 Ill. App. 3d 999, 1003 (2009) (finding "no contrary authority exists from the supreme court concerning the proper scope of review for *certiorari* actions seeking review of Court of Claims decisions" and "[t]hus, the *obiter dictum* from *Reichert* is binding").

¶ 37    Additionally, Bortone cites *Rossetti*, 109 Ill. 2d at 78 and *Tanner v. Court of Claims*, 256 Ill. App. 3d 1089 (1994), cases involving petitions for writ of *certiorari* and the Court of Claims,

but he inexplicably argues that they stand for the proposition that a petition for writ of *certiorari* is available to review a decision by the Court of Claims that is " 'unconstitutional *or* contrary to established law.' " (Emphasis added.) Though Bortone claims that our supreme court in *Rossetti* stated this exact phrase, a close examination of the decision reveals that the court did so in paraphrasing the plaintiff's argument: "The plaintiff alleges that the court of claims' decisions are reviewable when they are unconstitutional or contrary to established law." *Rossetti*, 109 Ill. 2d at 77. Later in the decision, our supreme court held that it "has the authority and the responsibility, as the final arbiter of the Constitution, to determine whether the Court of Claims has acted to unconstitutionally deprive a party of its right to due process." *Id.* at 78. *Rossetti* simply does not stand for the proposition that decisions from the Court of Claims are reviewable when they are unconstitutional *or* contrary to established law, but rather only when Court of Claims has deprived a party of its constitutional right to due process.

¶ 38    *Tanner*, 256 Ill. App. 3d 1089, likewise does not stand for the proposition that the circuit court can review decisions from the Court of Claims to determine if those decisions are contrary to established law. In that case, the appellate court re-affirmed the critical inquiry in reviewing a petition for writ of *certiorari* seeking to overturn a Court of Claims decision is whether the petitioner was denied due process. *Id.* at 1092-93. The appellate court in *Tanner* did, however, find that, under the specific facts of the case, the circuit court improperly dismissed the plaintiff's petition for writ of *certiorari* where the record from the Court of Claims filed in the circuit court was insufficient to determine whether there had been a due process violation. *Id.* Yet, the court in *Tanner* also noted that a circuit court may properly deny a petition for writ of *certiorari* without viewing the entire Court of Claims record where the plaintiff is not entitled to the review sought as a matter of law. *Id.* at 1092.

¶ 39    Unlike *Tanner*, the record in this case was sufficient for the circuit court to determine whether the Court of Claims deprived Bortone of his right to due process and consistent with our supreme court's decisions in *Reichert* and *Rossetti*, our review is limited to determining whether the Court of Claims denied Bortone due process by failing to afford him adequate notice and an opportunity to be heard. See *Hastings*, 2015 IL App (5th) 130527, ¶ 25 (finding that, "[u]nder current supreme court precedent, *** the scope of our review is limited to determining whether the plaintiff was afforded adequate notice and opportunity to be heard before the Court of Claims").

¶ 40    In this case, Bortone filed his complaint in the Court of Claims, and the Court of Claims stayed his case pending the resolution of his circuit court case. Once those proceedings finished, Bortone's case in the Court of Claims returned to the active calendar, and he amended his complaint. The Board responded by moving to dismiss his complaint based on the doctrine of *res judicata* and included a certificate of service with the motion indicating that its attorney served the motion on Bortone's attorneys. They obviously received the motion because Bortone filed a 20-page response citing to case law, the record and several exhibits he attached, all while using these to make various legal arguments. The Board also submitted a reply. The Court of Claims then rendered its decision based on Bortone's amended complaint, the Board's motion to dismiss, Bortone's response and the Board's reply.

¶ 41    In dismissing Bortone's amended complaint, the Court of Claims followed the same procedures as circuit court judges do every day in dismissing pleadings based upon motions to dismiss. See 74 Ill. Adm. Code 790.20 (eff. July 1, 2000) (providing that practice before the Court of Claims shall generally follow the civil practice law of the Code of Civil Procedure). Given that Bortone's Court of Claims proceedings followed the same procedures as ordinary civil litigation before the circuit court, the Court of Claims held an orderly proceeding in which Bortone was

given notice and an opportunity to be heard. See *Hastings*, 2015 IL App (5th) 130527, ¶ 22 (finding a plaintiff was afforded due process by the Court of Claims where, in part, she was able to respond to the defendant's motion for summary judgment with "a memorandum of law that included citations to relevant case law and statutes as well as legal arguments and analysis" which the Court of Claims considered before granting the motion).

¶ 42    While Bortone posits that the Court of Claims failed to consider his factual allegations and response to the Board's motion to dismiss, the Court of Claims written decision belies that assertion. For example, the Court of Claims in its written decision stated: "[Bortone] alleges that his claim in the Amended Complaint is a different cause of action than that in the previous Circuit Court lawsuit because one is a civil suit against individuals for intentional torts, and the second is breach of contract against the State in our Court where motives are irrelevant to the fact of breach." Similarly, later in the written decision, the Court of Claims stated: "[Bortone] alleges that Ramsey intentionally enabled the breach of his employment contract by the [Board]." There is no doubt that the Court of Claims considered Bortone's factual allegations and his response to the Board's motion to dismiss.

¶ 43    It is understandable why Bortone disagrees with the Court of Claims' decision to find the doctrine of *res judicata* barred his claims against the Board, but "*certiorari* may not be used to review the correctness of a decision by the Court of Claims based upon the merits of the case before it." *Reichert*, 203 Ill. 2d at 261. And a party will not be deprived of due process merely because the Court of Claims misapplies the law or otherwise committed an error. *Id.*; see also *Reyes v. Court of Claims*, 299 Ill. App. 3d 1097, 1105 (1998) ("Due process does not guarantee against erroneous or unjust decisions by courts which have jurisdiction of the parties and the subject matter [citation] and a constitutional question is not presented where a court may have

misconstrued the law or committed an error for which its judgment should be reversed."). In other words, even if the Court of Claims misapplied the doctrine of *res judicata*, this did not deprive Bortone of due process. Bortone could have filed a petition for rehearing in the Court of Claims (see 705 ILCS 505/15 (West 2016); 74 Ill. Adm. Code 790.220 (eff. Apr. 29, 2016)) to argue the correctness of its decision, but there is no evidence he did so. Instead, he filed a petition for writ of *certiorari* in the circuit court, limiting the scope of his review.

¶ 44    Bortone further argues that the Court of Claims deprived him of due process when it did not allow him an opportunity to have an evidentiary hearing let alone an oral hearing on the Board's motion to dismiss, but the opportunity to be heard does not require an oral hearing. See *Department of Central Management Services/Illinois Commerce Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 766, 770 (2010) (observing that "a hearing could be 'written' in the sense that parties could be heard solely through their presentation of written arguments and documentary evidence"); *Lawless v. Central Production Credit Association*, 228 Ill. App. 3d 500, 515 (1992) (finding that "the word 'hearing' is not necessarily restricted to an oral presentation by the parties and may instead refer to the court's consideration of a written presentation by the parties"). Thus, the Court of Claims' failure to hold an evidentiary hearing or an oral hearing on the Board's motion to dismiss did not deprive Bortone of due process, as the Court of Claims afforded him an opportunity to be heard through his written filings.

¶ 45    Additionally, Bortone asserts that the circuit court violated the law, exceeded its jurisdiction and violated its own statute in various ways. However, as the circuit court noted in dismissing his petition for writ of *certiorari*, Bortone's arguments in this manner were merely creative attempts to have the court review the correctness of the Court of Claims' decision, which is impermissible. See *Hastings*, 2015 IL App (5th) 130527, ¶¶ 23, 25-26 (rejecting a plaintiff's

argument that, under a petition for writ of *certiorari*, the circuit court should review the record of proceedings before the Court of Claims to determine whether its ruling was "arbitrary, capricious, or wholly unsupported by the facts and law" because the scope of permissible review was only to determine "whether the plaintiff was afforded adequate notice and opportunity to be heard before the Court of Claims"). Even when taking the allegations in Bortone's petition for writ of *certiorari* in the light most favorable to him, it is clearly apparent that his allegations would not entitle him to the relief sought because he has not sufficiently alleged a deprivation of his right to due process. The circuit court therefore correctly found that his petition did not sufficiently raise a due process violation, and accordingly, its dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)) must be affirmed.

¶ 46    Because we have found the circuit court properly dismissed Bortone's petition, we need not address whether the Board was a proper party in the circuit court litigation.

¶ 47                                    III. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.